SAUK COUNTY, Appellant, vs. INDUSTRIAL COMMISSION and others, Respondents.

*April 29—May 25, 1937.*

For the appellant there was a brief by *Vaughn S. Conway* and *John H. Rouse,* both of Baraboo, attorneys, and *Grady, Farnsworth & Walker* of Portage of counsel, and oral argument by *Mr. Conway* and *Mr. Walter H. Farnsworth.*

For the respondents Industrial Commission and state of Wisconsin there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan* and *Mr. M. J. Galvin* of Winona, Minnesota.

MARTIN, J. In November, 1933, the county board of supervisors of Sauk county adopted the relief program provided by ch. 363, Laws of 1933, and appointed three persons, who were members of the poor committee, to act as a relief committee with whom the WERA (Wisconsin Emergency Relief Administration) co-operated in setting up the county's relief administration. The committee selected a relief administrator. She later resigned and the committee then appointed a successor from among four candidates nominated by the Industrial Commission.

On August 2, 1934, Edward O. Triggs, aged thirty-eight, became the acting work secretary for Sauk county. He was directly under the supervision of the relief director of the county. He supervised projects entirely within the county. His salary was paid by the county, but the county was reim-

bursed. The county had the power to engage or discharge him. His traveling expenses were paid by the county and in part reimbursed by the state. Requisitions for reimbursements by the state to the county did not bear the names of any individuals for whom the salary was paid, and reimbursement checks were issued directly to the treasurer of Sauk county. The county appropriated $30,000, which it used to aid in defraying administrative and relief expenses.

On August 13, 1935, Mr. Triggs was summoned to Lancaster by H. J. Kuelling, director of District No. 10 of the WPA (Works Progress Administration), to discuss the continuation by the WPA of unfinished WERA projects in Sauk county, and to receive technical advice on the completion of such projects. While returning to Baraboo on a direct route from Lancaster, Mr. Triggs was struck by a train and killed.

It appears that since 1929 the county operated under the county system of maintaining its poor. That prior to the action of the county board of supervisors adopting the WERA poor relief system, it appointed a committee of five of its members to discuss the matter with a representative of the Industrial Commission to make full inquiry concerning the WERA program and system of operation. On November 23, 1933, that committee reported in writing to the county board of supervisors, recommending that Sauk county adopt the proposed relief system as outlined. The committee report was adopted by a vote of ayes 26, nays 12, and the finance committee was directed to prepare the necessary resolution to transfer from various funds to the general fund sufficient moneys to take care of outdoor poor relief on the basis of the plan adopted. No useful purpose will be served by further reference to details of the WERA relief system.

Mr. A. O. Tuhus, the chairman of the county board of supervisors, testified that the representative of the Indus-

trial Commission told how the program was going to work out; what employees would be necessary to carry on the program in the county; that the county would have to have a relief director; and that the selection of employees would have to be approved by the Industrial Commission. He further testified that the county poor committee was directed to take up all matters with the Industrial Commission after the county had adopted the program.

In May, 1933, the Federal Emergency Relief Act was passed by the congress. The purpose of the act was to relieve unemployment, and it was to be administered under the supervision of a federal emergency relief administrator. By chs. 194 and 401, Laws of 1933, the state accepted the provisions of the Federal Emergency Relief and Construction Act. By ch. 363, Laws of 1933, the Industrial Commission was empowered to administer the relief funds. Sec. 5 of that chapter provides:

"There shall be allotted by the Industrial Commission to county and local relief agencies administering relief in accordance with the provisions of section 6, not less than fifty per cent of the total local relief expenditures out of public moneys from all sources. . . ."

Sec. 6 provides:

"*Administration.* (1) Relief shall include . . . wages paid in cash or in kind for public work provided to dependent persons where the amounts paid are determined upon the basis of actual need and where the conditions prescribed in subsection (2) of this section are observed. . . .

"(2) The Industrial Commission and the public relief agencies shall co-operate with other state and local officials who can furnish public employment to the end that those in need of relief shall be given an opportunity to work for such relief. . . .

"(3) Relief shall be administered in accordance with rules and regulations to be adopted by the Industrial Commission, to insure adequate home investigations of the needs of applicants, the keeping of proper case records, and the purchase

and distribution of aid in an economical manner calculated to preserve the self-respect of the recipients.

"(4) Local units of government responsible for furnishing relief shall join together for the administration of such relief, when such combination is necessary to accomplish the purposes of this section.

"(5) The Industrial Commission may make such investigations and adopt such rules and regulations as are necessary to insure the observance of the conditions prescribed in this section, and the proper accounting and reporting of relief receipts and disbursements by public relief agencies. Such rules and regulations shall conform with the requirements of the federal government in allotting moneys appropriated by congress for relief purposes to this state. . . .

"(8) In all other respects, relief under this act shall be governed by chapter 49 of the statutes."

In order to be eligible for state aid under sec. 5, ch. 363, Laws of 1933, it was necessary that Sauk county be engaged in "administering relief in accordance with the provisions of section 6." Under the latter section, relief included so-called "work relief" which must be administered in accordance with "rules and regulations to be adopted by the Industrial Commission," which, in turn, "shall conform with the requirements of the federal government." The local agencies were required to co-operate with other officials able to furnish public employment.

The federal allotment of funds to Wisconsin to aid in meeting the unemployment situation had certain regulatory conditions attached. The state accepted such allotments with the conditions and set up the necessary machinery for the redistribution of the funds to the several counties of the state, also with certain regulatory conditions. Sauk county was advised of the conditions upon which it might receive funds, and it accepted the money subject to such conditions.

The examiner found, in part, as follows:

"Deceased was chosen as secretary of the 'work division,' and as such, he had charge of the work program involving

setting up projects, supplying men from relief rolls, making up pay rolls and generally supervising the relief work of the county. Deceased was paid by the respondent county, with funds allotted to the county by the WERA in the same manner as funds for other purposes were allotted; that respondent county elected to accept said relief plan in order that it might obtain state and federal aid in handling its relief problems; that in practice, active control and direction of the employees of the Sauk county relief department was exercised by the director of relief, but that respondent county, through its relief committee, had the right to control the activities of its relief department within the rules and regulations which had been laid down to secure competent and efficient administration.

"The examiner concludes that deceased was an employee of respondent Sauk county at the time of his injuries and death."

In *Marathon County v. Industrial Comm.* 218 Wis. 275, 280, 260 N. W. 641, where Gleason died as a result of an injury sustained while working on a drought-relief project, this court ordered the award to the parents vacated and the record remanded to the commission *for a finding as to whether or not the county had adopted the drought-relief program.* The court said:

"From these statutes it appears *a priori* that a county board is the only body with power to adopt the drought-relief program or to authorize proceedings under that program. It does not appear from the stipulated facts that the county board ever passed any ordinance or resolution relating to drought relief, or took any action whatever in relation to such matter."

At page 279 the court said:

"It is immaterial that the 'wage' for which the deceased was working had been prepaid, and that the prepayment had been made by another than the county. It is also immaterial that the contract was made by another than the county. It was made for the benefit and accrued to the benefit of the county. If the county highway commissioner had power to

set the deceased to work, the relation of employer and employee existed. Sec. 102.04 (1), Stats., expressly makes a county an 'employer' and sec. 102.07 (4) makes 'every person in the service of another under any contract of hire, express or implied' an employee."

In the instant case, there can be no question concerning the action of the county board. Before taking final action, it appointed a committee of five of its own members to investigate the plans and details of the WERA program. The committee was told by a representative of the Industrial Commission that the county would have to employ a director of relief and that the services of a works secretary and case workers would be required. All knew that the relief program was national in its scope and that certain regulatory conditions had to be complied with. With knowledge of the rules and regulations of the federal government and the Industrial Commission, the county board of supervisors duly adopted the program. Upon a careful examination of all the evidence, we conclude that there is ample support for the finding that the deceased was an employee of the county at the time of his injury and death.

The appellant makes the further contention that, assuming deceased was an employee of the county, he was not performing services growing out of and incidental to his employment when injured. This contention cannot be sustained. It appears that H. J. Kuelling, the district engineer for WERA and later for WPA in District No. 10, which included Sauk county, was located at Lancaster. On August 13, 1935, he requested Mr. Triggs to report at his office on the following day for the purpose of discussing with him uncompleted WERA projects in Sauk county. Mr. Triggs, in response to such request, went to Lancaster the following morning, conferred with Mr. Kuelling, and while returning to Baraboo in a direct route from Lancaster, his car was struck by a train and he was killed. There is a finding that

he was performing services incidental to his employment at the time of his injury. The appellant contends that this trip to Lancaster was not at the instance of the county; that it was made without the knowledge of his immediate superior—the WERA relief director in the county—or the committee on poor; that the trip was in response to a request by the district office of WPA, which wished Mr. Triggs' assistance in obtaining WPA projects.

It appears that there was some discussion at Lancaster between Mr. Kuelling and Mr. Triggs with reference to the completion of WERA projects in Sauk county. It was for the benefit of the county that work projects uncompleted under the WERA program be taken over and new projects commenced by WPA. Whatever was necessary to be done to complete the WERA projects in Sauk county, and Mr. Triggs' attendance at the conference to that end, was incidental to his employment. In any event, the evidence on this issue, as on the issue as to whether Mr. Triggs was an employee of the county, presented a question of fact and, there being credible evidence to sustain the findings, the award and judgment affirming same must stand. *Indrebo v. Industrial Comm.* 209 Wis. 272, 274, 243 N. W. 464; *Continental Baking Co. v. Industrial Comm.* 222 Wis. 432, 267 N. W. 540.

*By the Court.*—Judgment affirmed.