In the Matter of the Settlement of STANLEY MATRUSKI, a Poor Person.

County Court, Broome County, November 4, 1938.

*Samuel H. Pearis, Corporation Counsel [Jack W. Hummer, Assistant Corporation Counsel, of counsel], for the appellant.*

*James E. Connerton, for the town of Union, Broome county, N. Y.*

*Clarence L. Chamberlain, for the county of Broome, N. Y.*

MACCLARY, J. The facts are conceded and there is no dispute in relation thereto.

Consequently there is but one question to be determined by this court and that is, does work on a W. P. A. project constitute relief within the scope and meaning of the Public Welfare Law of the State of New York, particularly as it pertains to the establishment

of a settlement under the provisions of such law (Public Welfare Law, §§ 53, 56, 58).

Pursuant to section 58 of the Public Welfare Law, the public welfare officer of the county of Broome, after all the necessary preliminaries had been had, held a hearing on the 30th day of March, 1937, at which time the facts were conceded by a written stipulation signed by the respective parties. Thereafter, the said commissioner of public welfare of Broome county rendered his decision and filed a copy thereof with the public welfare officer of the city of Binghamton and also with the public welfare officer of the town of Union, they being all the public welfare officers involved.

The pertinent portions of such decision so rendered and filed being as folows:

" The poor or welfare settlement of Stanley Matruski is in the City of Binghamton, Broome County, New York.

" The Attorney-General has advised the Welfare Department of the State of New York that work on a W.P.A. project does not constitute relief at public expense.

" It is, therefore, my opinion and I so find that Stanley Matruski and family did not receive public relief between November 1, 1935 and February 15, 1936 and, therefore, resided in the City of Binghamton for a period of over one year without receiving public relief and acquired a welfare settlement in said City of Binghamton."

From such decision of said commissioner, the public welfare officer of the city of Binghamton within the time mentioned in said section 58, subdivision 2, duly appealed to the County Court of Broome county. The hearing on such appeal was duly brought on by the appellant, the public welfare officer of the city of Binghamton, before the County Court of Broome county out of term. A new trial of the matters in dispute was duly had in said court without a jury as provided in said section. At such hearing the facts were conceded by the respective parties by a written stipulation duly filed with the court, such facts so conceded being as follows: " That Stanley Matruski was a poor person; that he applied for public relief from the Commissioner of Public Welfare of Broome County on February 11th, 1937; that thereafter on February 15th, 1937, Harold S. Tolley, Commissioner of Public Welfare of the City of Binghamton, having been served with a notice of the above application, duly served notice on Floyd M. Combs, Commissioner of Public Welfare for Broome County, to the effect that Stanley Matruski had no welfare settlement in the City of Binghamton because of the fact that up to September 25th, 1936, the said

Matruski had a welfare settlement in the Town of Union, and that thereafter, before a year had elapsed, the said Matruski had been in receipt of W. P. A. work relief; that on the 16th day of February, 1937, Hubert S. Osterhout, Commissioner of Public Welfare of the Town of Union, duly notified Floyd M. Combs, Public Welfare Commissioner for the County of Broome, in writing, that the said Matruski had no settlement in the Town of Union, stating in said notice that W. P. A. workrelief given to Stanley Matruski was not aid according to the ruling of the Attorney-General and further on the grounds that he had lived continuously in the City of Binghamton for over one year without receiving public relief; that the said Matruski did receive moneys for work performed for W. P. A. during the period and before he had resided in the City of Binghamton one year, and it was further stipulated that he had received no relief other than such W.P.A. work relief.   It was further stipulated that the settlement of the said Matruski was in the Town of Union and that as a home relief case for the said Town, he was certified for W. P. A. employment by Hubert S. Osterhout, Commissioner of Welfare for the said Town of Union, on August 4th, 1935.   It was further stipulated that the said Matruski moved to Binghamton on or about November 1st, 1935, residing at 4 Garfield Avenue in said City; that he was discontinued from W. P. A. on February 15th, 1937, by Paul Philips, Supervisor of Intake and Certification, reasons given ' has an adequate family income ' and that the said Matruski lived in Binghamton from November 1st, 1935, up to the time he made application for public relief on or about February 15th, 1937; that up until the time application was made on or about February 15th, 1937, the fact was conceded that if the said Matruski had not worked under W. P. A. he would have been in need of public relief.   October 10, 1938.''

Upon such conceded facts it is necessary for this court to render a decision on the legal question first stated herein.

At the outset, I may say that I am mindful of the importance and far-reaching effect that the decision of this court may have on the administration of relief in the State of New York, especially as to this particular phase of the functions of the various welfare departments throughout the State. So far as I can learn, there is no decision of any court in the State on the subject which might be of aid in my determination, or which might be a precedent with which to sustain a theory.

Up to now, I am informed there is a wide divergence of opinion on the subject, and due to this unsettled condition, many welfare officers throughout the State have declined and are declining to certify people for work on W. P. A. projects in their respective

areas, where there is any question as to the place of settlement under the Public Welfare Law which might be affected or changed by such certification.

I am also informed that the Attorney-General of the State of New York on or about December 12, 1935, rendered an opinion to the State Department of Social Welfare in which he held that work on a W. P. A. project did not constitute relief so as to affect the welfare settlement as defined by the Public Welfare Law. 1 am also informed that on September 21, 1936, the Solicitor-General, Hon. Henry Epstein, rendered a similar opinion in a letter dated that day, directed to the Department of Social Welfare of the State of New York, a portion of which letter reads as follows: " The W. P. A. employment is still supposed to be a self sufficient and sustaining employment and not relief in the sense of our Welfare Law. Settlement may therefore be gained for a W. P. A. worker."

At the present time, the administration of the Public Welfare Law apparently contemplates two different kinds of relief, viz., home relief and work relief. Home relief is defined in section 2, subdivision M, of said law; work relief does not seem to be defined in said Welfare Law, but apparently gets its name and authority for use from other State or Federal statutes. However, both those terms of relief are commonly employed by welfare departments, either directly as in the case of home relief, or indirectly as in the case of work relief. The terms home relief and work relief are relatively modern innovations.

Originally the administration of relief was a comparatively simple problem. Then it consisted largely in the maintenance of poorhouses or almshouses where paupers were kept, housed, fed, clothed and maintained, the inmates usually being old and infirm without physical strength or financial means or both, to be self-supporting, and having no relatives or friends ready, capable or willing to support them. In some instances, aid was given to the poor people who were partially self-supporting and self-sustaining, where it seemed more appropriate to do so, either by cash contribution, or by furnishing food and the other necessities of the home.

Then the place maintained by the municipal subdivision for such purpose was called the almshouse or poorhouse and the official administering the public funds for such purposes under the authority given by the Poor Law, was known in a town as an overseer of the poor or poormaster and in a county as the superintendent of the poor.

But in 1929, by legislative enactment, all this was changed. The Poor Law became the Public Welfare Law; the officials responsible

for its administration became welfare officers; and the persons aided became recipients of relief or dependent persons and in some instances I have noticed that such individuals are even given the high-sounding appellation, relief clients.

What constitutes work relief has been held in *Manning* v. *State* (123 Conn. 504; 196 A. 777) to be " Wages paid by a city or town from money specifically appropriated for the purpose or from money provided by the Federal government or any agency thereof to persons unemployed or whose employment is inadequate to provide the necessities of life."

. And in *Sauk County* v. *Industrial Commission* (225 Wis. 179; 273 N. W. 515) the court said: " Relief shall include   *   *   * wages paid in cash or in kind for public work provided to dependent persons where the amounts paid are determined upon the basis of actual need."   Also in *Dibner* v. *Cousminer* (157 Misc. 229), upon an application under section 793 of the Civil Practice Act, to compel a debtor who was a W. P. A. employee, to make payment on a judgment of a judgment creditor in installments, the court in denying the application said, among other things:

" The judgment debtor is not, however, an ordinary Federal employee.   He is the recipient of a quasi-charitable contribution in the form of wages.   His work is done for the government, not because the work is immediately necessary, but because it is important to create work, and it is better to pay wages than a dole.

" The amount of wages he receives is not measured by the ordinary market value of his labor, nor by the strict union wage scale, but rather by an amount necessary to sustain bare existence among his fellow men.   In order to grant this motion this court must say that the amount of wages this judgment debtor receives exceeds the bare necessities, and permits him to apply some part of his wages for the benefit of the creditor.

" It grates upon the conscience to believe that section 793 can be so administered that moneys appropriated by the Federal Government for the purpose of relieving economic suffering, and which must be eventually returned by taxing all, can be applied thus indirectly for the benefit of a judgment creditor."*

In the instant case we are primarily concerned with the matter of the settlement of the above-mentioned poor person as the provisions of the Public Welfare Law would apply to him.   This is an important question because of its tremendous effect on the distribution of the welfare load which is now recognized to be of abnormal proportions.   The present statute contains approximately the same provisions regarding settlement as its predecessor

laws. Section 56 covers subject-matter similar to section 41 of the former Poor Law and has established certain definite safeguards to protect taxpayers from unwarranted tax burdens and relieve them of the responsibility for the relief or care of indigent persons who have not resided for one year continuously in the locality without receiving public relief or care at the expense of such locality.

In case of the removal of an indigent person from a locality where he has gained a welfare settlement to some other locality from which he received public welfare or relief, the expense thereof is chargeable against the locality of his settlement. As the above-named Stanley Matruski is conceded to have a legal welfare settlement in the town of Union and since his removal to the city of Binghamton has only received work relief on W. P. A., if it is decided that W. P. A. is relief, then his settlement would still be in the town of Union. On the other hand, if it should be decided that W. P. A. is not relief, then he would have gained a settlement in the city of Binghamton as he had resided there continuously the necessary length of time. In one case the town of Union would be responsible for the expense of whatever relief was granted him, in addition to the W. P. A. employment, and in the other, it would be the responsibility of the city of Binghamton.

This sort of situation, I am informed, exists all over the State of New York and is causing much confusion and considerable controversy.

Under normal economic conditions this question would not be so vital, for then there would be a sort of normal balance which would tend to create an equitable distribution of the relief need and load. Likewise under such conditions, there would be normal private employment and a consequent average of distribution of workers in the community, dependent on the employment needs thereof. But with the existing situation, natural normal balance is upset and the unemployed and needy are compelled to move to communities which have the largest number of relief projects. The practical result is that the urban communities are the goal for relief workers, as there the greatest opportunity for work relief is found. In other words, there is a trend in the movement of relief needs which is abnormal and is influenced largely by the nature and location of certain relief projects. Hence a judicial determination of the question is of paramount importance. And although such decision may not meet with popular approval, yet, due to the extensive applicability of the law relating to welfare settlement, it is imperative that it be considered dispassionately and impartially and decided without considering any of the theoretical features, but only the practical application of the

theory and philosophy underlying the legislation and the intent behind and responsible for its enactment.

Under section 56 of the Public Welfare Law it is provided that receipt of relief and care of any of the following types shall not prevent the acquiring of a new settlement:

" (a) Care of a wife or minor child of such person in a State institution or in any institution on commitment for delinquency.

" (b) Relief given by reason of quarantine because of a communicable disease under the provisions of the Public Health Law.

" (c) Relief for the cost of which the recipient has repaid the public welfare district in full.

" (d) Relief given at the request of a school or other public agency as part of its program of health betterment."

This section bears amendments down to and including 1937.

Also section 57 of said law places certain restrictions on settlements in certain counties therein named, which section was last amended by the Laws of 1938.

It would have been easy for the Legislature, by appropriate amendments to either of the sections referred to, to have included work on W. P. A. projects among the excepted types of cases where the receipt of relief and care would not have prevented acquiring a new settlement. But such amendment has not been made even though it must have been known by the members of the Legislature, or at least many of them, that this question was being raised by public welfare officers all over the State. Therefore, I reach the conclusion that such work relief was not intended to be so excepted.

I come to the unescapable conclusion that work on a W. P. A. project must be considered as and is relief in its generally accepted application and effect. To hold otherwise would be inconsistent with my honest opinion and firm conviction.

Therefore, I decide and hold that the settlement of the above-named Stanley Matruski during the time involved in this proceeding was in the town of Union and that the said person received public relief at public expense by work on a W. P. A. project while living in the city of Binghamton and did not gain a new settlement therein.

For the reasons hereinbefore stated, and in accordance with the foregoing conclusions, the decision of the commissioner of public welfare of the county of Broome dated April 21, 1937, should be and the same is hereby reversed.

An order may be made and entered accordingly.