[Civil No. 2533.   Filed December 27, 1926.]

[252 Pac. 512.]

FEDERAL MUTUAL LIABILITY INSURANCE COMPANY, a Corporation, Plaintiff, v. INDUSTRIAL COMMISSION OF THE STATE OF ARIZONA and CLEVE W. VAN DYKE, R. B. SIMS and BURT H. CLINGAN, Commissioners, Defendants.

Messrs. Goodman & Melliss (Mr. Harry I. Howard and Mr. N. T. M. Melliss, of Counsel), for Plaintiff.

Mr. Harold A. Elliott and Mr. James S. Casey, for Defendants.

LOCKWOOD, J.—George Roberts died on the thirteenth day of December, 1925, as the result of injuries received in the course of his employment while working for the Salt River Valley Water Users' Association. The employer was insured against liability under the Workmen's Compensation Act of Arizona (Laws 1925, chapter 83), which we will refer to hereafter as the act, by the Federal Mutual Liability Insurance Company, hereinafter called petitioner. The father of the deceased made application to the Industrial Commission of Arizona, hereinafter called the Commission, for an award of compensation, asserting that both parents of the deceased were partially dependent on the latter for their support. Upon a hearing before the Commission, it was stipulated that deceased and his brother, Guy Roberts, were in the receipt of $104 per month each at the time of the former's death, and that both of them contributed equally to the support of their parents. The father also testified at the hearing that these contributions amounted to about ninety per cent of the wages received by each son; that this amount was turned over to the mother, and from it she returned to the boys such sums as they needed for personal expenses, and provided them with board and lodging. The exact amount returned

to the boys does not appear in the testimony. The Commission, on the twenty-fifth day of March, 1926, made a compensation award to the mother and father of the deceased of a commuted death benefit in the sum of $2,080, payable by petitioner, together with reimbursement for funeral expenses not to exceed $150. Petitioner moved for a rehearing before the Commission on April 13th. This application was denied, and thereupon petitioner secured from this court a writ of *certiorari* under the provisions of section 90 of the act. After oral argument was had and briefs filed, the case was submitted to this court for decision.

The principal contention of petitioner is that the Commission erred in its award for the reason that the same was made by it under paragraph 7 of section 70 of the act, when, as a matter of law, it should have been made under paragraph 6 of said section 70. In its answer to the writ the Commission raises three propositions: First, that an award under facts like these set forth above is governed by paragraph 7 instead of by paragraph 6; second, that, if it is so governed, since petitioner did not raise the question of the correctness of the computation of the award, if paragraph 7 applies, at the hearing before the Commission, it cannot now be raised in this court; and, third, that, even if such question can be raised, if there is any substantial evidence supporting the award, this court will refuse to disturb the Commission's ruling.

This is the first case which has come before us asking for a construction of the Workmen's Compensation Act since the Commission has begun to function. It is of much importance as well to the Commission as to those entitled to compensation that both a definite rule of procedure and an interpreta-

tion of the substantive portions of the act should be established as soon as possible. We therefore discuss and determine the propositions presented by the Commission in their inverse order.

This court has held repeatedly and consistently that, when a case comes before it from any inferior court, where the lower court has made findings of facts on conflicting evidence, it will not review such findings, and, when a judgment has 'been rendered without express findings of fact, if there is reasonable evidence in the record from which findings could be made which would support the judgment, it will be presumed that the trial court did make such findings, and we will not reverse the judgment on the facts. *Blackford* v. *Neaves*, 23 Ariz. 501, 205 Pac. 587; *Thomas* v. *Newcomb*, 26 Ariz. 47, 221 Pac. 226; *Brown* v. *Peterson*, 27 Ariz. 418, 233 Pac. 895.

It is true the Commission is not a court. *Alabam's Freight Co.* v. *Hunt*, 29 Ariz. 419, 242 Pac. 658. It is nevertheless a tribunal established by the legislature, and having bestowed upon it the right to determine questions of fact and to apply the existing law thereto in matters within the jurisdiction conferred upon it by the act. While under section 90 of the act this court may review the evidence, we think it is but logical, just and reasonable that the rulings of such a tribunal, made as the result of a hearing in which all the interested parties have appeared and have been allowed to present such evidence as was relevant and material to the question involved, is entitled to the same respect as that of a trial court. *Morgan* v. *Butte Central Min. & Mill. Co.*, 58 Mont. 633, 194 Pac. 496.

We therefore hold that in such cases the same rule will apply to findings of fact, actual or presumptive, by the Commission as applies to actual or

presumed findings of fact by a trial court or the verdict of a jury under the same circumstances.

The next question is whether or not this court may review a question not fairly presented to the Commission at its hearing for its decision. There are two provisions in the act for the review of the action of the Commission, one which applies to its orders and the other to its final awards. The first is in the superior court and the second in the Supreme Court. Section 14 of the act provides:

"No action, proceedings, or suit to set aside, or amend any *order* of the commission, or to enjoin the enforcement thereof, shall be brought unless the plaintiff shall have applied to the commission for a hearing thereon at the time and as provided in section 13, and in the petition therefor shall have raised every issue in such action. . . . " (Italics ours.)

Sections 23 and 24 cover actions to review orders of the Commission, and section 24 contains the following provision:

"I. If, upon the trial of such action, it shall appear that all issues arising in such action have not theretofore been presented to the commission in the petition filed, . . . the court shall, . . . transmit to the commission a full statement of such issues not adequately considered, and shall stay further proceedings . . . upon the receipt of such statement the commission shall consider the issues not theretofore considered, . . . and shall report its order thereon to said court, . . . the court shall thereupon order the pleading to be so amended as to raise the issues resulting . . . and shall thereafter proceed with such action. . . . "

While this applies only to actions in the superior court to review orders of the Commission, and not awards thereof, which are only reviewable by the Supreme Court, we are nevertheless of the opinion

that common sense requires the application of the same doctrine by us. It is well said that "justice delayed is only half justice." The act is a highly remedial one, and, if proceedings under it are delayed unnecessarily, it fails to a greater or lesser extent to fulfill the purpose for which it was intended. Nothing could be more calculated to defeat a correct and speedy application of its principles than to allow an appellant to raise in the courts issues which the Commission had no opportunity of passing on. We therefore hold that this court will not, in a proceeding brought under section 90 of the act, review or consider any matter which was not fairly presented to the Commission for its determination.

This brings us to the last question, which is whether or not the Commission applied the proper section of the act in computing the award in question. The death benefit clauses of section 70 of the act read as follows:

## "(A) Death Benefits.

"If the injury causes death, the compensation shall be known as a death benefit, and shall be payable in the amount and to and for the benefit of the persons following.

"1. Burial expenses, not to exceed one hundred fifty ($150.00) dollars, in addition to the compensation payable under this act.

"2. To the widow, if there is no child, thirty-five per centum of the average wage of the deceased. This compensation shall be paid until her death or remarriage, with two years' compensation in one sum upon remarriage.

"3. To the widower, if there is no child, thirty-five per centum of the average wage of the deceased, if wholly dependent for support upon the deceased employee at the time of her death. This compensation shall be paid until his death or remarriage.

"4. To the widow or widower, if there is a child or children, the compensation payable under subdivision

(1) or subdivision (2), and in addition the additional amount of fifteen per centum of such wage for each child until the age of eighteen years, in no case including provision for widow or widower and children to exceed sixty-six and two-thirds per cent. of the average wage. In case of the subsequent death of such surviving wife, or dependent husband, a single surviving child of the deceased employee shall have his compensation increased to twenty-five per centum of such wages; or in the event that there is more than one surviving child, twenty-five per centum should be paid for one child under eighteen, and fifteen per centum for each additional such child, to be divided among such children share and share alike, but not exceeding a total of sixty-six and two-thirds per cent. of the average wage; provided, that compensation on account of any such child ceases when it dies, marries or reaches the age of eighteen years, or if over eighteen years and incapable of self-support, becomes capable of self-support.

"5. If there be a surviving child or children of the deceased under the age of eighteen years, but no surviving wife (or dependent husband), then for the support of each child until the age of eighteen years, the provisions of the foregoing subsection shall apply.

"6. If there be no surviving wife (or dependent husband) or child under the age of eighteen years, there shall be paid to a parent, if wholly dependent for support upon the deceased employee at the time of his death, twenty-five per centum of the average monthly wage of the deceased during dependency, with an added allowance of fifteen per centum if two dependent parents survive; to the brothers or sisters, under the age of eighteen years, if one is wholly dependent upon the deceased employee for support at the time of injury causing death, twenty-five per centum of the average monthly wage for the support of such brother or sister, until of the age of eighteen years. If more than one brother or sister is wholly dependent, thirty-five per centum of the average monthly wage at the time of injury causing death, divided among such dependents share and share alike.

If there is no one of them wholly dependent, but one or more partly dependent, fifteen per centum divided among such dependents share and share alike.

"7. In all other cases, questions of total or partial dependency shall be determined in accordance with the facts as the facts may be at the time of the injury. If the deceased employee leaves dependents only partially dependent upon his earnings for support at the time of the injury causing his death, the monthly compensation to be paid shall be equal to the same proportion of the monthly payments for the benefit of persons totally dependent as the amount contributed by the employee to such partial dependents bears to the average wage of deceased at the time of the injury resulting in his death. The duration of such compensation to partial dependents shall be fixed by the commission in accordance with the facts shown, but in no case exceed compensation for one hundred months.''

The vital question is to what does the word "them" in the last sentence of paragraph 6 refer. If its application is limited to brothers and sisters, then the Commission rightly used paragraph 7 in making its award; if, on the other hand, as contended by petitioner, it refers to all the persons mentioned in the paragraph, the award was outside its jurisdiction as made. In order that we may determine this question, let us first examine and analyze the quoted paragraphs of section 70, which is the portion of the act dealing particularly with death benefits and the beneficiaries, and the amounts to be received by them.

There are seven paragraphs in the section which are pertinent to this analysis. The first provides for the burial expenses of the decedent. The second covers benefits to the widow. The third refers solely to dependent widowers. The fourth states that payments shall be made to the surviving parent for the benefit of the minor children of the deceased, and then provides for practically every conceivable situa-

tion which could arise with such children. The fifth applies the protection given the children by the preceding paragraph to cases when no parent survives. It will be noted on examination of all these paragraphs that each one takes up a special class of beneficiaries, and deals with all the rights of that class in the one paragraph. Paragraph 6 discusses the rights of parents and brothers and sisters, and in no other part of the section are they referred to by name. In cases of total dependency, a single parent or a single brother or sister is given exactly the same compensation—twenty-five per cent of decedent's wages. Then follows a careful provision for all cases of total dependency when there is more than one surviving parent or brother or sister. The paragraph then concludes with the following sentence:

"If there is no one of them wholly dependent, but one or more partly dependent, fifteen per centum divided among such dependents share and share alike."

Paragraph 7 begins with the words, "in all other cases, . . . " and discusses both total and partial dependency, but mentions no specific class of dependents by name. The remainder of the section is not material to this discussion.

In interpreting the meaning of an ambiguous provision of a statute, there are several canons of construction. The first and the cardinal one is, of course, the intent of the legislature. It is obvious from both the history and language, not only of the act, but of the constitutional amendment (see Laws 1922, chapter 82), which made it possible, that its effect (and, we might almost say, its chief purpose), was to make all benefits as definite and specific as possible, and leave to the discretion of the Commission and the courts only those things which in their nature could not be determined in advance. Having this undoubted purpose, it is inconceivable the legislature

intended to provide a fixed compensation for both parents and brothers and sisters in cases of total dependency, and then in cases of partial dependency to fix a definite compensation for brothers and sisters, while leaving parents to the discretionary relief so carefully avoided for the former.

Another clue to the intent may be gathered from the fact that, so far as each other class of dependents is concerned, the whole subject is treated in one paragraph. The only paragraph referring by name to parents or brothers and sisters is No. 6, and the limitation contained in the last sentence of the paragraph is plural and general in its terms. It would be a very unusual method of construction to hold a limiting clause, general in its nature, and contained in a paragraph expressly naming two classes, applied to only one of those classes, while the general phrase "in all *other* cases" in the next paragraph included the other class specifically named in the preceding paragraph.

As against these evidences of intent, the Commission invokes only the doctrine of the "last antecedent" and the rule of liberal construction. Neither of these rules can be considered, however, when the intent of the legislature is clear, and that it is clear in this case both from the whole purpose and language of the act and the constitutional amendment, and the ordinary logical and grammatical rules of composition, seems to us beyond doubt.

We are of the opinion the evident intent of the legislature was that both parents and brothers and sisters are to be governed by paragraph 6, whether the dependency be either partial or total.

The award of the Commission was without jurisdiction, and is set aside.

McALISTER, C. J., and ROSS, J., concur.