[Civil No. 4015. Filed October 31, 1938.]

[83 Pac. (2d) 786.]

JACK ROSE, Petitioner v. THE INDUSTRIAL COMMISSION OF ARIZONA, Respondent.

Messrs. Silverthorne & Silverthorne, for Petitioner.

Mr. Don A. Babbitt and Mr. Howard A. Twitty, for Respondent.

ROSS, J.—The petitioner is dissatisfied with the award of the Industrial Commission and brings it before the Supreme Court for review.

He was working for the Gillespie Land and Irrigation Company, insured in the state compensation fund, when, on January 30, 1937, he was injured. At the time of his injury he was driving a tractor. In turning the tractor, it slipped on some loose hay and rolled over. Petitioner jumped and was on his hands and knees when a wheel of the tractor passed over the back of his right lower leg fracturing the extreme lower end of the fibula. All agreed it was a crushing injury.

In due time, he made application to the Industrial Commission for compensation. Owing to the inability of the physicians attending petitioner to determine whether the injury would be permanent and if so the extent of it, the application was not passed upon until March 1, 1938, when the commission allowed him compensation for temporary disability in the sum of $553.71; and permanent partial disability equal to a

10 per cent. loss of function of the right foot, or for the period of four months at $30 per month.

The petitioner filed his motion with the commission for a rehearing, which was granted and held on April 20, 1938. At such hearing petitioner introduced evidence showing or tending to show that, the permanent partial disability to his leg and foot was from fifty to sixty per cent. The respondent introduced no evidence but relied upon the evidence before it at the time of making the award (March 1, 1938), consisting of the unverified reports of the medical rating board, particularly the one of February 7, 1938, reading:

"He still complains that he cannot put any weight at all on the toes and that the calf muscles cramp and that the foot gets cold. He can put full weight on the heel but cannot lift the heel to throw the weight on the ball of the foot. He claims that this is not because of pain but that he simply has not the muscular action to do it. With the foot off the floor, however, he can plantar flex it. The movements at the ankle are all practically normal except there is slight limitation of dorsiflexion.

"There is at this time no motion at the point of fracture. The patient walks with a slight limp. The measurements are as follows: At the calf, left side, 15½ c. m., right 12 c. m.; left ankle 9½ c. m., right 9 c. m.; mid-thigh 16¾ c. m. on each side.

"The X-ray examination made on February 5th (1938) in comparison with the findings of the examination of November 6th (1937) indicate that there is quite definite increase in the amount of callus and definite evidence of union at the fracture. The callus formation has not been entirely converted into normal bone structure at this fracture and probably the fracture would not be regarded as completely closed at this time. It does, however, appear to be sufficiently firm for functional use of the foot. The atrophy throughout the bone structure of the foot and ankle area has changed quite definitely for the better. The bone structure is more nearly normal and the mottling and

cloudiness in the tarsal bones has practically disappeared.

"Conclusions: After reviewing the findings, making physical examination, testing the functions of the ankle, and giving consideration to the X-ray findings, the Board is of the opinion that the only disability now present is from non-use of the ankle and that the disability as the result of the injury will amount to 10% of a permanent partial disability of the foot."

After the rehearing, the commission again accepted the medical board's recommendation and affirmed its former award.

Petitioner insists that the commission erred in its ruling in two respects: (1) In not accepting the proof of percentage of permanent partial disability as presented on rehearing; and (2) in limiting the award for such disability to a percentage.

He admits the rule is well settled by this court that the decision of the Industrial Commission on controverted questions of fact is binding and will not be disturbed by the court but will be accepted as correct. He contends, however, that the only evidence submitted at the rehearing—the only formal hearing in fact ever had in the case—shows a permanent partial disability to his foot of from fifty to sixty per cent., and that the report of the medical board of February 7, 1938, over two months before, does not even raise a conflict with the sworn evidence. He contends that the evidence conclusively demonstrates that the injury to his foot had not become stationary on February 7, 1938.

Dr. G. O. Shirey, of Gila Bend, had petitioner as a patient from August 23, 1937, to February, 1938, giving him physiotherapy treatments from two to three times a week and was a witness at the rehearing. He made an examination of petitioner on the 19th day of April, the day before the rehearing, and such report is among the files of the case. His sworn testimony was cor-

robative of and in substance the same as this report, except that in his testimony he estimated the permanent partial disability of petitioner's foot as fifty to sixty per cent. and in the report he says it is "of a high percentage." We quote from his report as follows:

" . . . At his request I examined him today. I note very little improvement over my findings of Aug. 1937. I have, without the patient's knowledge, observed him getting in and out of his car, his movements on the street at all hours of the day, walking with a cane, with crutches, and without any support at all and have frequently said he walks as if he has an artificial foot. Therefore my opinion is:

"That Rose has a permanent disability of a high percentage, exactly what percentage I am unable to state, but his gait is that of a dorsiflexion; arthritis has developed in the injured foot that may never clear up; atrophy of the muscles of the leg is present and doesn't resume the normal in many of these cases."

This witness testified that the more petitioner used his leg the worse it got; that what the foot needed was not "use" but in his opinion an exploratory operation to determine if some of the nerves were not being impinged by the bony structure of the foot. It is interesting to note that this same operation was suggested or recommended by the medical rating board in its report of July 15, 1937.

We think Doctor Shirey's testimony and report prove that the prognostication of the medical board as to the "functional use of the foot" and as to "the atrophy . . . of the foot and ankle area" and as to "the bone structure" becoming normal, etc., was incorrect.

It appears to us that the condition of petitioner's foot and ankle at the time of the rehearing should have controlled the Industrial Commission in making its award, unless the evidence showed that the injury had become stationary and fixed on February 7,

1938, when the medical board made its examination and report. We agree with the petitioner that the report of the medical board did not raise a conflict with the evidence submitted at the rehearing, and for that reason the award should be set aside.

 The Industrial Commission figured the petitioner's compensation for permanent partial disability to his foot under (u) of subdivision (C) of section 1438, Revised Code of 1928, and he contends that in addition thereto he should be compensated under (w) of said subdivision (C) for "partial disability for work." In *Ujevich* v. *Inspiration Consol. Copper Co.*, 42 Ariz. 276, 25 Pac. (2d) 273, it was decided that a workman's compensation for the loss of the use of a member was limited to compensation for temporary disability by reason thereof, and to the percentage in schedule (a) to (u) of subdivision (C) for the loss of such member, and that he was not entitled to compensation under (w) also. See *Ossic* v. *Verde Central Mines*, 46 Ariz. 176, 49 Pac. (2d) 396.

The award is set aside.

McALISTER, C. J., and LOCKWOOD, J., concur.