[Civil No. 4180. Filed November 12, 1940.]

[107 Pac. (2d) 196.]

LOUIS CHAPMAN, Petitioner, v. FINLAYSON LEASE, Defendant Employer, and THE INDUSTRIAL COMMISSION OF ARIZONA, Defendant Insurance Carrier, Respondents.

Messrs. Cox & Cox, for Petitioner.

Mr. Rouland W. Hill and Mr. Howard A. Twitty, for Respondents.

ROSS, C. J.—This is a *certiorari* proceeding brought to this court under the Workmen's Compensation Law (sec. 1391 et seq., Rev. Code 1928, as amended) to reverse the award of the Industrial Commission disallowing compensation to Louis Chapman, who claims he was injured in an accident arising out of and in the course of his employment by the Finlayson Lease, a corporation, in its mining operations at the Vulture Mine near Wickenburg, Maricopa county, in January of 1938.

At that time the employer was engaged in working over the dumps of the old Vulture Mine to recover the gold therein by the cyanide leaching process, and claimant (petitioner here) was then, and had been for about four months prior thereto, employed by the corporation, his duty being to make up the cyanide solution, test the same and thereafter sluice or wash the cyanide tank. The procedure followed was to put dry cakes of cyanide in a five-gallon bucket, with holes punched in the bottom, hang the bucket on the end of a two-inch pipe, release the water through the pipe into the bucket of cyanide salts and thence in its diluted form into a one hundred-ton tank until it was filled with the solution. Claimant would test the strength of the solution by sucking some of it into a pipette or glass tube containing a bulb with graduations indicating the strength of the fluid.

Claimant testified that on January 1, 1938, when the water from the pipe contacted the cyanide cakes, the

solution sprayed his face, nose and eyes and that he inhaled the fumes thereof, and that that was the first time it had occurred; that his arms and legs and whole body began to cramp; that he grew dizzy and everything turned black, breathing was hard and seemed to be shut off, his knees gave way and he fell on his face and cold sweat broke out all over him; that he was taken from the mine to his home, where he was confined for three days, and that Dr. Floyd B. Bralliar attended him; that the doctor released him after three days; that he suffered with headaches and stomachaches, cold sweats, and was dizzy; that these cleared up so that he returned to work on or about January 5, 1938, and on that day, while he was attending to his work, he was stricken down again in the same manner. On this occasion, the particular thing he was doing when his sickness came on was titrating or testing the strength of the solution by sucking it into a pipette, and got some of it in his mouth but did not swallow it. This time he was removed to Doctor Bralliar's hospital in Wickenburg. His symptoms were the same as in the first sickness only more severe and lasting.

At the time of the hearing on August 11, 1939, about a year and a half after the above attacks, claimant was still under the care of Doctor Bralliar and was sick and disabled.

The evidence is that before the above occurrences he was well, weighing 155 pounds, and that at the hearing his weight was only 113 pounds. He had pyorrhea and under the advice of Doctor Bralliar his teeth were extracted. Also, while he was in the hospital, he underwent an appendectomy. Thereafter he developed a right inguinal hernia and because of it wore a truss. These abnormal bodily conditions, it is agreed, do not account for the paroxysms described above, or the lingering illness following them, or the

disability of claimant. His loss of weight was ascribed to functional malnutrition.

From the above facts, which are not disputed, and the expert testimony of two doctors, the Industrial Commission refused to allow claimant any compensation and in that connection, on September 6, 1939, made the following findings:

"5. That the evidence is insufficient to establish that the applicant suffered any injury by accident arising out of and in the course of his employment on or about said date (Jan. 1, 1938).

"6. That the evidence is further insufficient to establish that the disability from which the applicant alleges to be suffering is proximately the result of any injury sustained while in the course of his said employment by the above named defendant employer."

The doctors do not agree. Doctor Leslie R. Kober examined claimant soon after he claimed to have been poisoned and reported to the commission that in his opinion claimant was a psychoneurotic and that he was not injured by cyanide as claimed; that his actions or collapses could be accounted for on the basis of hysteria or psychoneurosis. Doctor Floyd B. Bralliar, who attended claimant as his physician, on February 26, 1938, and after Doctor Kober's diagnosis, wrote the commission as follows:

"As regards to Lewis Chapman, I am forced to say that the disposition as made by your office concerning this case meets with my approval in all particulars excepting for his first attack which I believe should be covered by the compensation. With the second attack, which in some particulars was different from the first, I told the patient and his relatives that I did not feel that his trouble was caused by cyanide and have felt at no time since that his complaints are due to cyanide but there has been much complaint in the community, because I did not feel that his prolonged illness was compensable. For this reason he was sent down for a check up."

However, at the hearing on August 11, 1939, Doctor Bralliar testified that from further study, research and practice he had come to the belief that claimant was cyanided and suffered injury thereby as claimed.

Both doctors agree that the effect of cyanide poisoning is immediate; that if cyanide is taken internally, or the fumes are inhaled in sufficient quantity, the hydrocyanic acid thereby created in the body kills in a very short time; that in nonfatal cases the manifestations are, in general, as claimant's were but pass away very soon through the kidneys and lungs.

Most of the toxicologists say there is no such thing as chronic cyanide poisoning and Doctor Kober has accepted that pronouncement as correct. Doctor Bralliar, while agreeing that most of the authorities are to the effect that when a person gets cyanided he either dies or gets well right away, expressed on the hearing the opinion that there is such a thing as chronic cyanide poisoning. He says the patient may partly recover but that symptoms persist for a long period of time or until the breathing of the tissue cells is restored. Doctor Kober says, in effect, according to his information there is considerable doubt as to whether there is such a thing as chronic cyanide poisoning but that, if there is, he does not believe claimant is suffering from such poisoning.

██ The claimant would have this court review the evidence and make its own findings and conclusions as to what it shows. This would require a departure from the rule we early adopted in compensation cases, and have uniformly followed, of accepting the findings of the Industrial Commission when the evidence is in conflict. The reasons for such rule are set forth in numerous of our cases. To cite a few: *Rose* v. *Industrial Com.*, 52 Ariz. 466, 83 Pac. (2d) 786; *Ison* v. *Western Vegetable Distributors & Industrial Com.*, 48 Ariz. 104, 59 Pac. (2d) 649; *Blankenship* v. *Indus-*

*trial Com.*, 34 Ariz. 2, 267 Pac. 203; *Federal Mutual Liability Ins. Co.* v. *Industrial Com.*, 31 Ariz. 224, 252 Pac. 512. And we feel that, while in some cases the result is not as we would like, on the whole and in the long run it is the best thing for both the employer and employee.

■ Claimant contends that if he is "suffering from psychoneurosis based on the injury received from the cyanide poisoning" he is entitled to compensation, and he insists that such is the fact. Psychoneurosis is a disease. It is commonly used as a synonym of neurosis (see Webster's definition of neurosis), and in *Phelps Dodge Corp.* v. *Industrial Com.*, 46 Ariz. 162, 49 Pac. (2d) 391, we held that neurosis is a disease. The question is, was the psychoneurosis the result of any industrial injury. Doctor Kober's opinion was that claimant was not poisoned by cyanide and the Industrial Commission's finding is in accord with such testimony. Under the compensation statute, a disease is not compensable unless it is the result of an injury sustained in an accident. *Pierce* v. *Phelps Dodge Corp.*, 42 Ariz. 436, 26 Pac. (2d) 1017; *Phelps Dodge Corp.* v. *Industrial Com.*, *supra.* While claimant contends he was injured by cyanide poisoning, upon competent and substantial evidence the Industrial Commission has determined otherwise.

It is contended that claimant's evidence as to his disability and its cause and extent is positive and respondent's is negative; that therefore claimant should prevail. On this question we have spoken, in *Ison* v. *Western Vegetable Distributors* and *Industrial Com.*, *supra* [48 Ariz. 104, 59 Pac. (2d) 653], as follows:

" . . . It is urged that the testimony of one physician is positive that the injury caused the abscess, while the other merely states that it was extremely probable that it did not, and that the commission

should, therefore, have accepted the positive testimony over that which was merely conjecture. There might be some merit in this contention if the point at issue was one which was subject to positive knowledge, such as the presence or absence of a certain person, a collision between two automobiles, or other similar matters; but the question is necessarily one of opinion and not of knowledge, and, when this is so, the fact that one opinion is expressed more positively than the other, does not, as a matter of law, require that a trier of fact give it more weight. . . . ''

██ Finally, we must confess that the evidence of claimant's collapses on January 1 and 5, after coming in contact with and inhaling, as he says, cyanide fumes, appears to us as ordinary laymen as pretty good proof that he was poisoned thereby and that he was not faking; yet it is rather strange that in his four months' employment the cyanide solution had not before sprayed his face, nose and eyes and he had not inhaled the fumes when his work at all the times was being done under the exact conditions. Doctor Bralliar at first evidently thought claimant was either a mental case or was faking. (See Doctor Bralliar's report above.) At all events, whatever we may think, under the rule heretofore announced that we would not disturb the findings of the commission if they are supported by substantial evidence, we cannot, if we would, substitute our findings for those of the commission.

The award is affirmed.

LOCKWOOD and McALISTER, JJ., concur.