[Civil No. 4486. Filed May 4, 1942.]

[125 Pac. (2d) 699.]

MARJORIE PHYLLIS KING, Petitioner, v. GEORGE W. ORR, Employer; EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LIMITED, Insurance Carrier; THE INDUSTRIAL COMMISSION OF ARIZONA, and L. C. HOLMES and LYNN LOCKHART, as Members of Said THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Mr. Leon S. Jacobs and Mr. Burt H. Clingan, for Petitioner.

Mr. Rouland W. Hill and Mr. Howard A. Twitty, for Respondent Industrial Commission.

Mr. Riney B. Salmon, for Respondents George W. Orr and Employers' Liability Assurance Corporation, Limited.

ROSS, J.—In this proceeding Marjorie Phyllis King claims that she is entitled to death benefits under the workmen's compensation law, sections 56–901 to 56–977, Arizona Code 1939, for the death of her husband, Frank Frederick King, who, she alleges, was injured in an accident arising out of and in the course of his employment by George W. Orr, at or near Duncan, Arizona, on March 25, 1941, while he was engaged in bridge construction, and that said accident was the proximate cause of his death, at Phoenix, Arizona, on April 14, 1941.

The insurance carrier for Orr at the time was the respondent Employers' Liability Assurance Corporation, Limited.

The petitioner's claim for such benefits, it appears from the record, was filed with the Industrial Commission on May 12, 1941, and on May 21, 1941, she and her attorney, Leon S. Jacobs, filed a petition and application for a hearing thereon.

On September 18, 1941, at Phoenix, the Industrial Commission held a hearing at which the petitioner was represented by her attorney Leon S. Jacobs and the insurance carrier by its attorney Riney B. Salmon. After the parties had introduced all their evidence, the Industrial Commission took the matter under advisement until November 8, 1941, and on that day found as a fact that Frank Frederick King died April 14, 1941, and that his death "was not the result of nor aggravated by an injury alleged to have been sustained on March 25, 1941," and denied her death benefits.

Thereafter, on November 28, 1941, the petitioner filed her motion for a rehearing of her claim for benefits, which motion was denied on December 2, 1941.

Petitioner claims that the Industrial Commission erred in denying her a rehearing; that it acted without jurisdiction and in excess of jurisdiction in its findings and conclusions, for the following reasons:

"1. That respondent Commission had theretofore failed and, by its denial of rehearing, refused to require the reports of physicians to be made to said Commission in accord with the intendment of Sections 56–964 and 56–966, Arizona Code 1939;

"2. That respondent Commission erred in its Order Denying Rehearing and in 'being satisfied with the correctness of the findings and award rendered' in view of its failure to search through all the sources available to it, for the facts.

"3. That all competent evidence before respondent Commission was to the effect that the death of Frank Frederick King was the proximate result of his injury of March 25, 1941."

She contends that the injury her husband received in the accident of March 25 was the proximate cause of his death on April 14, and the employer and the insurance carrier insist that such accident and injury

were not shown to have had anything to do with his death.

On March 25, King, with others, was doing some structural steel work on a bridge spanning a canyon as a part of a public highway. Such construction was being done by George W. Orr, employer. The work had progressed to the point of driving the rivets to hold the beams together, and was about 30 to 35 feet above the ground. King's part in this work was to "buck" rivets with what the witness described as a "nine bar." He was both "standing and sitting" on an 18-inch "I" beam, holding the nine bar under a rivet when the bar slipped causing him to lose his balance and fall some three or four feet, when, with the assistance of a fellow worker, his fall was intercepted. His left chest struck said workman on the right shoulder, with the nine bar between them. This nine bar was a piece of steel weighing about 30 pounds and was about 4½ feet long. After this King "was pretty sick." He sat down about 10 minutes, until he got his wind back. He skinned his leg on the girder as he slipped off, and, after he got it painted at the company office, resumed work. After that he did no more "bucking" of rivets and gradually ceased picking up iron used in reinforcing. He complained to his fellow workmen of pain through his chest and back. He stayed on the job until it was finished on April 5 and returned to his home in Phoenix April 7. He complained to his wife of pain in his left side, chest and back; got up at night because of discomfort around his heart; took soda for relief.

April 14, 1941, King was working for the Del Webb Construction Company, in the basement of the Woolworth building in Phoenix. He was tying steel preparatory to pouring a cement floor and suddenly, for no reason, toppled over and died.

All the evidence is to the effect that King was apparently a well man; that he was the kind of person who made no complaints of pain or suffering; that he was a skilled steel construction worker and was generally engaged as such.

April 16, Dr. O. O. Williams, a pathologist, performed an autopsy on the body of King, in the presence of A. C. Kingsley, Medical Advisor to the Industrial Commission, and Dr. J. M. Greer. Doctor Williams' summary of his post-mortem examination is in these words:

"There is a definite occlusion of the right coronary artery, and almost complete occlusion of the left coronary artery. These areas show narrowing with atheromatous degeneration and calcification involving the larger branches of the coronary arteries. The death was sudden enough to prevent the myocardial changes associated with coronary occlusion. Sudden death from complete occlusion of the coronary arteries frequently show no myocardial changes. There is no evidence of an accident which could have caused the patient's death."

It was at the autopsy that it was first discovered King was suffering from an advanced stage of hardening of the arteries, or arteriosclerosis. Doctor Kingsley, who was present at the autopsy, in his report to the Industrial Commission, says:

" . . . There was a rather general arteriosclerotic process of the coronary arteries and the immediate cause of death was coronary occlusion."

The expert testimony for both the petitioner and the respondents agrees that King died of a thrombosis or an occlusion of the left coronary artery. These witnesses differ as to what caused the thrombus to form. Two well-known and reputable physicians (R. F. Palmer and R. S. Flinn) were of the opinion that the accident of March 25 aggravated the arteriosclerotic

condition and was the proximate cause of King's death. Two equally well-known and reputable physicians (O. O. Williams and Louis B. Baldwin) testified that in their opinion the accident of March 25 had nothing to do with his death.

As before stated, the commission, after considering the whole record, came to the conclusion that the petitioner had not established by a preponderance of the evidence that the injury or shock of March 25 was the proximate cause of King's death, and denied her death benefits. The assignments set forth in the petition for writ of *certiorari* and petitioner's brief challenge the correctness of this decision. Under the first and second of such assignments petitioner makes this proposition of law:

"It is the duty of the commission, whenever a claim for compensation is presented to it, to search calmly, impartially, and judicially through all the sources available to it, either through presentation by others or by its own investigation, for the truth."

This is an excerpt from the opinion of this court in *Doby* v. *Miami Trust Company et al.,* 39 Ariz. 228, 5 Pac. (2d) 187, 191. In that case we had before us the question of the power or lack of power of the commission to compromise claims of workmen for compensation. In that case, also, the state compensation fund was the carrier. We reached the conclusion that the commission had no right or power to compromise the claim. We also warned against the commission being partisan because it was the carrier of the insurance. We said the commission acted very much in the same capacity as a court and that "in considering an application for compensation it must act *judicially,* and in no sense as a partisan."

In the present case the insurance carrier is not the state compensation fund but a private insurance company. The contest, therefore, was between the em-

ployer and his insurance carrier on one side and the petitioner on the other. There can be, then, no assertion that the membership of the Industrial Commission had any occasion to be partisan or to take sides with either of the parties. The petitioner, during the hearing before the commission, and, indeed, from the very start, had an attorney to look after her interests and to see that all available evidence was produced to sustain her claim of death benefits. An examination of the record will show that Mr. Jacobs fully, competently and well took care of her interests. An examination of the testimony of the expert witnesses, both on direct and cross-examination, shows convincingly that he had familiarized himself with the human anatomy and the serious physical impairment caused by the hardening of the arteries, and the probable effect the accident of March 25 had in causing King's death. (Mr. Clingan first appeared for petitioner in this court.)

Under the first and second assignments petitioner refers to sections 56–964 and 56–966 as not having been observed in some ways. The first section provides:

" . . . A physician who makes or is present at such examination [one asked for by the commission] may be required to testify as to the result thereof."

The next section provides:

" . . . every physician who attends an injured employee of such employer, shall file with the commission, from time to time, a full and complete report of every known injury to the employee arising out of or in the course of his employment and resulting in loss of life or injury."

It is claimed the record discloses that Doctor Greer and Doctor Moore attended the autopsy; that Doctor D. Fournier signed the death certificate, and that Doctor Mills, at some place or some time, talked with the

witness Doctor Palmer about some feature of the case, and that it was the duty of the commission to require Doctors Greer and Moore to testify or to file reports and that a failure to do so is reversible error. And the implication is that the commission should have secured the testimony of Doctors Mills and Fournier. The weakness of this contention lies in the fact that the petitioner nowhere alleges that these witnesses' testimony or their reports would have been favorable to her. So far as the record shows, their testimony or reports might have been corroborative of the testimony of Doctors Williams and Baldwin. Petitioner's attorney doubtless had his reasons for not calling these doctors as witnesses.

The Industrial Commission has in its service investigators and one of these did investigate the death of Frank Frederick King. His report is on file with the commission and was open to the inspection of the petitioner.

 The third contention of petitioner is based on this legal proposition:

"The interpretation of medical reports and medical evidence is not a question of fact within the bosom of the commission, but upon appeal is to be determined by this court."

In short, her contention is that this court may and must substitute its conclusions, which may be drawn from the medical reports and the testimony in the record, for the conclusions of the Industrial Commission. This, of course, is contrary to the rule adopted by the court. In *Doby* v. *Miami Trust Company, supra,* we said:

" . . . In passing upon awards of compensation made by the commission and brought before us for review in the statutory manner, we have repeatedly and consistently held that its decisions in questions of fact are entitled to the same respect as is the verdict

of a jury or the findings of fact of a trial court, and we review those awards only in the same manner and to the same extent that we would review a judgment of the superior court. *Maryland Casualty Co.* v. *Industrial Commission,* 33 Ariz. 490, 266 Pac. 11; *Holloway* v. *Industrial Commission,* 34 Ariz. 387, 271 Pac. 713; *Blankenship* v. *Industrial Commission,* 34 Ariz. 2, 267 Pac. 203; *Federal Mutual Liability Insurance Co.* v. *Industrial Commission,* 31 Ariz. 224, 252 Pac. 512. . . . "

And in a more recent case, *Chapman* v. *Finlayson Lease,* 56 Ariz. 224, 107 Pac. (2d) 196, 197, we said:

"The claimant would have this court review the evidence and make its own findings and conclusions as to what it shows. This would require a departure from the rule we early adopted in compensation cases, and have uniformly followed, of accepting the findings of the Industrial Commission when the evidence is in conflict. The reasons for such rule are set forth in numerous of our cases. To cite a few: *Rose* v. *Industrial Comm.,* 52 Ariz. 466, 83 Pac. (2d) 786; *Ison* v. *Western Vegetable Distributors and Industrial Comm.,* 48 Ariz. 104, 59 Pac. (2d) 649; *Blankenship* v. *Industrial Comm.,* 34 Ariz. 2, 267 Pac. 203; *Federal Mutual Liability Ins. Co.* v. *Industrial Comm.,* 31 Ariz. 224, 252 Pac. 512. And we feel that, while in some cases the result is not as we would like, on the whole and in the long run it is the best thing for both the employer and employee."

We think what was said in *Ison* v. *Western Vegetable Distributors,* 48 Ariz. 104, 59 Pac. (2d) 649, 653, may appropriately be followed here. In that case we were discussing the rule with reference to the preponderance of the evidence and we said, after some general observations:

" . . . With this rule for our guidance, can we say affirmatively that the preponderance of the evidence as to the causal connection between the accident and the bronchial abscess is, as a matter of law, with the petitioner? Obviously, when two equally honest and experienced expert witnesses reach opposite conclu-

sions, the only thing the trier of fact can do is to decide which one of these witnesses is more probably correct in his conclusion. In so doing, he may take into consideration the experience of the witnesses in diagnoses of ailments of the kind under consideration, and their interest or bias, conscious or unconscious, in the result to be reached. Applying these rules, we think it is clear to any fair-minded layman that it cannot be said affirmatively that, as a matter of law, it was the duty of the commission to accept the opinion of one medical witness over that of the other. Such being the case, we are bound by the conclusion which it has reached as to which witness was more probably correct. . . . ''

██ The petitioner cites *Kearney* v. *Industrial Accident Board,* 90 Mont. 228, 1 Pac. (2d) 69, 70, as supporting her contention that this court should ignore the findings and conclusions of the Industrial Commission and make its own findings and conclusions. In that case the court found that there was no evidence to support the board's finding of fact. It said:

''We have carefully read and considered all of the evidence in the case, and are of opinion that the claimant established his right to compensation under the law by undisputed evidence. . . . ''

That is not the case here. The evidence as to the cause of King's death was in dispute. Of course, if there were no evidence in the record to support the Industrial Commission's findings, it would be the duty of this court to set them aside. Under the Montana statute (section 2961, Revised Codes 1921), the appellate court is given the power to set aside the findings and conclusions of the Industrial Accident Board and to enter its own findings and conclusions. We have no such statute.

The award of the Industrial Commission is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.