[Civil No. 2749.   Filed November 21, 1928.]

[271 Pac. 713.]

C. B. HOLLOWAY and W. E. MORGAN, Petitioners, v. THE INDUSTRIAL COMMISSION OF ARIZONA, and R. B. SIMS, BURT H. CLINGAN and WM. E. HUNTER, Members of Said The Industrial Commission of Arizona, Respondents.

Mr. F. W. Perkins, for Petitioners.

Mr. J. J. Taheney, for Respondents.

McALISTER, J. — Upon application of Henry Espana for compensation for an injury sustained by him on October 12, 1927, while working on a thresh-

ing machine, the Industrial Commission, both originally and upon rehearing, made an award of $1,903.53 in his favor, and C. B. Holloway and W. E. Morgan, against whom the award runs and who were not insured against liability under the provisions of the Workmen's Compensation Act of Arizona (Laws 1925, chap. 83), have by *certiorari* brought the matter here for review. The objection to the award is based upon two grounds; the first being that the accident causing the injury did not arise out of and in the course of the employment, and the second that there is no reasonable evidence to support the finding that W. E. Morgan was a partner of C. B. Holloway at the time of the accident. These propositions necessitate a brief statement of the facts.

Some five days before the accident, petitioner W. E. Morgan went to the town of Williams, which was fifteen miles from his farm, to employ several men to work on a threshing machine, and among those he secured and took out to the ranch was applicant Henry Espana, a fifteen-year-old boy. Both he and Mr. Morgan testified that he was employed to cut bands on bundles for the thresher, the latter stating in addition that he was hired to do nothing else in connection with the thresher. Espana cut bands on bundles the first three days, but at his request loaded hay in the field the fourth day. According to his testimony, however, he expected to cut bands again on the fifth, and soon after reaching his work that morning the machine was started merely to warm it up, but before running any length of time the wheel on top ceased to turn, and both Morgan and the repairman, a Mr. Cargyle, asked him to go up on the thresher and start it. He climbed up and attempted it, but in doing so one of his feet slipped, was caught in the cylinder, and so mangled that it was later amputated. Both Morgan and Cargyle denied that they asked

him to perform this act, but testified that he climbed up of his own accord out of idle curiosity and without their knowing it until they heard him scream. The Industrial Commission, however, accepted the testimony of Espana and found that Morgan did make the request, and this court is bound by that finding, because its unvarying rule, announced many times, is that a finding made on conflicting testimony will not be disturbed where there is sufficient evidence to support it.

One of the contentions of petitioners is that since Espana was employed to cut bands on bundles, and not to run or repair the threshing machine, the accident did not arise out of and in the course of his employment. This is true, it is argued, for two reasons. The first is that it occurred while he was doing something separate and distinct from the service he was hired to perform, that is, at a time when he had quit his regular employment and was for the time being pursuing his own pleasure, thus bringing him within the ruling in *Ocean Accident & Guarantee Corporation, Ltd.,* v. *Industrial Commission of Arizona et al.,* 32 Ariz. 265, 257 Pac. 641, which held that an injury under such circumstances is not compensable. In view of the finding, however, that his employer directed him to do what he did, there is nothing in the record upon which this claim may rest.

The second reason is that even though Espana was asked by Morgan to start the wheel and was injured while attempting to comply with the order, his service in that respect was a casual employment, and not in the course of the work he was engaged to do. This is likewise without merit, for though he was employed to cut bands on bundles and turning the wheel to start the machine was not included therein, yet it was a necessary part of the work of threshing and

was performed in obedience to an order of the person who employed him, and under the authorities an injury arises out of and in the course of employment and entitles the injured employee to compensation when it is "received in the performance of work for his employer outside the scope of his usual duty, but which the employee had been expressly ordered to do by someone authorized to direct him as to his work." 33 A. L. R. 1336, annotation to *Utah Copper Co.* v. *Industrial Commission.* The authorities on this proposition are cited in this note, and among them is *Engels Copper Min. Co.* v. *Industrial Accident Commission,* 183 Cal. 714, 11 A. L. R. 785, 192 Pac. 845, in which it was held that a "safety engineer at a mine, who contracted influenza while taking care of 'flu' patients at his office during an epidemic, under orders from his employer," was entitled to compensation upon the ground that this disease was contracted in the course of his employment.

It is next contended that there is no reasonable evidence to support the finding that W. E. Morgan was a partner of C. B. Holloway at the time of the accident. The latter was the former's stepfather and lived with his wife on a neighboring farm. Both of them testified that they were not partners in the farming operations, but that Holloway was cultivating the farm under a lease from Morgan, and for the purpose of showing the existence of such an agreement, as well as its terms, there was received in evidence a writing by the terms of which the latter agreed to furnish the seed (oats) and the machinery with which to plant, cultivate, and harvest the crop, while the former agreed to do the work and pay all expenses, each to have one-half the proceeds. The facts are such, however, that it is unnecessary to determine whether they were or were not partners.

The title to the farm upon which the injury was

received and Morgan and his wife were living at the time stood in the name of the former until some time in 1925, when, thinking his death was approaching, he conveyed it to his wife without consideration. He recovered from this illness, however, and continued thereafter to treat the farm as his the same as he had prior to the transfer, and a few days before the injury hired some men in the town of Williams to help gather the crop, among them being the applicant, Espana, who, when asked by a man named Martin, whose son Morgan had sought but could not get, if he "wanted to go to work for Morgan," replied that he did. After learning from Martin that Espana was willing to work for him, Morgan looked him up, took him out to the farm, and put him on a threshing machine as one of a crew of five, though three days later he gave him at his request a job of loading hay on wagons in the field. It appears also that Morgan boarded Espana, directed his work, gave him his personal check for five dollars in payment of wages two days before the accident, took him to the doctor immediately following the injury, and told him that everything would be fixed up and he would buy him an artificial foot. He offered the same day to settle with his mother for $200, stating, according to her testimony, that if she did not accept it he would transfer his property. Holloway and Morgan both admit that the latter hired and paid the men, Espana included, but they testify further that this was done at Holloway's request, because he had not at the time the means with which to do it and that he later repaid Morgan for these expenditures. The testimony of Espana discloses, however, that if he were working for Holloway he did not know it, because no one told him so prior to the accident. Morgan himself stated that he did not tell him because he thought he knew it. It appears also that Morgan was one of the

owners of the thresher and that he and Cargyle were running it.

It is clear that Morgan as well as Holloway was interested in harvesting and threshing the grain, and there was nothing in the contract of employment to advise Espana that Morgan was acting for another in hiring him. If he were in fact the agent of Holloway in doing this and desired to avoid the personal liability such employment carried, he should have disclosed to Espana not merely the fact that he represented another, but also that such other was Holloway. In 2 C. J. 816 is found the following statement of the rule:

"It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only the fact that he is acting in a representative capacity but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another."

Under the contract of employment there can be no question but that Morgan was liable to Espana for his wages, and this of course carried with it the responsibility the Workmen's Compensation Act places upon an employer coming within its terms.

The award is affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.