[Civil No. 3234.   Filed October 18, 1932.]

[15 Pac. (2d) 253.]

LULU MATILDA EZEKIELS, Petitioner, v. CITY OF TUCSON and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Mr. E. T. Cusick and Mr. John D. Lyons, Jr., for Petitioner.

Mr. Burt H. Clingan (Mr. Albert Mackenzie, of Counsel), for Respondent Industrial Commission.

ROSS, J.—Claiming that her husband, Louis Ezekiels, while in the employ of the city of Tucson, Arizona, as a policeman, received injuries on November 21, 1926, from which he died September 22, 1931, Lulu Matilda Ezekiels, on the twenty-third day of December, 1931, on her own behalf and in behalf of her daughter, Ina M., filed with the Industrial Commission of Ari-

zona a claim against the city of Tucson, employer, and the Industrial Commission as insurance carrier, for death benefits. Thereafter, on January 25, 1932, at the city hall in Tucson a hearing was had on petitioner's demand at which both oral and documentary evidence was introduced, which was later transcribed and submitted to the Industrial Commission for consideration and decision.

On March 2, 1932, the commission made the following findings and award:

"Findings.

"1. That the above-named deceased (Ezekiels), while employed . . . by the above-named defendant employer, who was insured against liability for compensation under said (Workmen's Compensation) law by the above-named defendant insurance carrier, sustained an injury by accident arising out of and in the course of his said employment, entitling him to compensation therefor in the total sum of $2,506.61.

. . .

"3. That said deceased died on the 23rd day of September, 1931, as a result of carcinoma of the stomach, the proximate cause of which is undetermined but may not in any way be considered as related to his injury.

"Award.

"Now, therefore, it is ordered that the applicant take nothing from the defendants, or either of them, by reason of said death."

April 11, 1932, claimant filed with the commission an application for a rehearing on the ground that the findings and award were not supported nor justified by the evidence. This application for rehearing was denied, and the record, proceedings, and evidence before the commission are here for review in response to a writ of *certiorari*.

The attack is on the commission's finding that there was no causal connection between Ezekiels' injuries of November 21, 1926, and his death on September 22, 1931. The rule we have adopted with reference

to the commission's findings is that if such findings are based upon disputed or conflicting evidence from which different conclusions might reasonably be drawn we will not disturb such findings, but will, rather, treat them the same as the verdict of a jury, or the findings of a court at *nisi prius*. The obvious reason for this rule is that the Industrial Commission is in a better position to decide disputed or contested questions of fact than is this court. *Doby* v. *Miami Trust Co.*, 39 Ariz. 228, 5 Pac. (2d) 187; *Savich* v. *Industrial Com.*, 39 Ariz. 266, 5 Pac. (2d) 779; *Holloway* v. *Industrial Com.*, 34 Ariz. 387, 271 Pac. 713; *Blankenship* v. *Industrial Com.*, 34 Ariz. 2, 267 Pac. 203; *Maryland Casualty Co.* v. *Industrial Com.*, 33 Ariz. 490, 266 Pac. 11; *Federal Mut. L. Ins. Co.* v. *Industrial Com.*, 31 Ariz. 224, 252 Pac. 512. Where, however, there is no evidence to support the findings, or where the conclusion from the findings is clearly erroneous, such findings or conclusion will not be permitted to stand. *Blankenship* v. *Industrial Com., supra.* Remembering these rules, we now turn to the history of the Ezekiels case, which has a very important bearing upon the issues of this case:

November 21, 1926, while on the streets of Tucson, Ezekiels was knocked down by an automobile, sustaining fractures of his left knee and his right ankle and the dislocation of his right shoulder. He was then 68 years of age, and the finger-print man in the police department of the city of Tucson. In due course after the accident he applied to the Industrial Commission for compensation and, after investigations and hearings as provided by law, was awarded compensation up to and including the month of March, 1928. This award was made November 29, 1927, but before it was made and on, to wit, November 17, 1927, Dr. G. W. Purcell, at the request of the commission, examined Ezekiels and reported that there was a slight enlargement of the left knee; that the ankle

appeared normal, also the shoulder, there being no pain or tenderness in any joint; that there was a small percentage of disability which on account of age would probably be permanent.

The award of November 29th was allowed to become final.

In October, 1928, Ezekiels became afflicted with an ingrowing nail on his right great toe. ' The toenail was removed, but gangrene developed and spread so that the toe was amputated. Notwithstanding, the gangrene developed further, so that on the 14th of December the foot was amputated and later, for the same reason, some of the leg was removed. Dr. Purcell, reporting on the situation, said:

"The gangrene of the toe and foot in my opinion was due to poor circulation in that extremity. It is quite possible that the old accident of November, 1926, . . . had some relation to this case and also the fact of his age cannot be overlooked. I believe the old injury threw the foot out of a correct or former normal alignment and had some influence toward causing the ingrowing toenail, which necessitated operation."

We gather from the record that Ezekiels was a very much beloved and respected police officer, because much influence both from the police force of Tucson and throughout the state, was brought to bear on the Industrial Commission to reopen the case. The letters and correspondence in the record show this. Accordingly, in May, 1929, there was filed with the commission an application "to adjust a claim for compensation." The commission on July 10, 1929, found that the ingrowing toenail and the disabilities arising therefrom were not caused by the injury of September 21, 1926, and denied any relief. This became final.

In the record is a "Memorandum," dated September 16, 1930, initialed by one of the commissioners, which is in the following words:

"While in Tucson on recent trip, Mr. Pequignot, City Clerk, City of Tucson, again took up the matter of the case of Louis Ezekiels. He appreciates that the case has been definitely closed but he nevertheless pointed out the fact that Mr. Ezekiels is an old, old resident of the city and has been employed by the city for a considerable period of time and that his wife and daughter are dependent upon him and that in view of the fact that the city of Tucson pays considerable premium into the Compensation Fund, the city would very much appreciate it if we could reopen the matter and provide some compensation.

"I feel that the case was unquestionably correctly decided a year ago. There is, however, always the possibility that the Commission were mistaken in their conclusion and we might, with propriety, make an award providing for the payment of $80.00 a month, or half pay to Mr. Ezekiels until his death which, according to Mr. Pequignot, cannot be very far in the future."

Two days thereafter, September 18th, the commission made the following order:

"Good cause appearing therefor, it is ordered that until further action by the Commission the above named applicant shall be paid the monthly sum of Eighty ($80) Dollars per month, the first payment to be made on September 20th, 1930."

In the meantime just when the record does not show, Ezekiels accidentally struck his left leg against his office desk and as a result an ulcerous sore formed on his leg that would not yield to the treatment usual in such cases. Gangrene developed in this leg, and in September, 1930, it was amputated between the knee and the ankle.

Dr. Edward J. Gotthelf was Ezekiels' physician all the time from September, 1927, until his death. He had done all his surgical work except the removal of the toenail, which was done by Dr. Purcell. Ezekiels died September 22, 1931, in St. Mary's Hospital, Tucson. Dr. Gotthelf issued a death certificate in which

he stated that the principal cause of death was carcinoma of the stomach and that there were no contributing causes. At the hearing this witness testified that two or three months prior to his death Ezekiels "complained of pain up in his abdomen" and was nauseated and throwing up, so much so that he could not be X-rayed. He stated that wounds caused by the amputations had healed very well; that there was just one little spot not healed. Contrary to the death certificate, he testified on direct examination that the injuries to Ezekiels in the automobile accident were a contributing cause to his death; and on cross-examination he said they were a possible contributing cause to his death. He did not, or would not say, that his diagnosis of the cause of death as carcinoma was erroneous, but that he could not verify such diagnosis by X-ray because of the disturbed condition of Ezekiels' stomach.

There was evidence from this witness that Ezekiels was suffering from hardening of the arteries. Dr. Purcell stated that arteriosclerosis and endarteritis were probably at the base of all his troubles with his legs; that these ailments were not the result of, nor was the carcinoma of the stomach the result of, trauma.

It seems to us there is very little conflict in this evidence. The only evidence that rebuts the Industrial Commission's findings is the professional opinion of Dr. Gotthelf to the effect that Ezekiels' death was, or probably was, contributed to by the injuries sustained in the automobile accident. This opinion is at war with the death certificate and, even if it had been direct and positive, might well have been disregarded by the commission; but it was not direct and positive and could afford no basis for a finding that Ezekiels died as a result of his automobile injuries, or that such injuries contributed to his death.

But petitioner contends that because the Industrial Commission paid compensation to her husband up to his death she is entitled to death benefits. This does not necessarily follow unless it should be made to appear that the injury for which he was being compensated caused or hastened his death. It is incumbent upon the petitioner to show that Ezekiels died as a result of injuries suffered in the accident of September 21st. The evidence and the record show that Ezekiels was not seriously hurt in that accident; that in a short time he was in almost as good condition as he was before he was hurt; that he applied for and received compensation for such injuries, in accordance with the commission's award; that in the meantime he became afflicted with the ingrowing toenail, and, on the theory that this trouble and all its dire consequences were the direct result of his injuries of September 21st, he petitioned the commission to re-adjust his compensation; that the commission heard evidence on this application and found as a fact that the injury of September 21st did not cause the ingrowing toenail and was not responsible for the gangrenous condition of his system and refused him any further compensation. There is in the record, however, an entry made by the commission that does not harmonize with the findings above stated, and that is the order of September 18th, which directs that $80 a month be paid Ezekiels until further action by the commission. In connection with this order there are no findings and the "Memorandum" of the 16th of September conclusively shows that it was not intended to be an award of compensation but on the contrary a donation. But should we treat this last allowance as compensation, as was done under very similar circumstances in the Doby case, *supra,* no presumption could arise therefrom that Ezekiels' death resulted from the injury he suffered in the automobile accident.

It seems to us the commission's finding, that Ezekiels died of carcinoma of the stomach the cause of which was not in any way related to his injury, is supported by substantial evidence, and, that being so, under our rule the finding and award should not be disturbed.

McALISTER, C. J., and LOCKWOOD, J., concur.