Voswinkel, Appellant, vs. Industrial Commission and others, Respondents.

*September 16, 1938—January 10, 1939.*

For the appellant there were briefs by *Sanborn, Blake & Aberg* and *Edward Conrad,* all of Madison, and oral argument by *Wm. J. P. Aberg.*

For the respondent Industrial Commission there were briefs by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

On the motion for rehearing, there were also briefs by *J. A. Bloomquist* and *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Arthur Larson* of counsel, all of Milwaukee, for the respondents city of Tomah and Employers Mutual Liability Insurance Company.

The following opinion was filed November 9, 1938:

NELSON, J.    The facts are not in dispute.    Caroline W. D. Voswinkel, hereinafter called the "plaintiff," was, on May 27, 1936, sixty-seven years of age.   She was a cripple, having but one limb.   She walked with a crutch.   On the morning of that day, while walking across the lobby of the Young Women's Christian Association building in Madison, for the purpose of leaving her room key at the desk, she encountered a wet spot on the floor.   Her crutch slipped and she was precipitated to the floor.   Her fall resulted in the fracture of both the radius and ulna of her left arm, necessitating the reduction of the fractures by a physician, hospitalization for a number of weeks, and probable partial permanent disability.   At that time she was the duly appointed librarian of

the Tomah city library, a position she had acceptably filled for more than thirty-five years. She was in Madison for the sole purpose of consulting Miss Mary Hazeltine, the head or director of the library school, in regard to certain projects concerning the Tomah library. As early as April, 1936, the plaintiff had written Miss Hazeltine that she was planning on coming to Madison to have a library conference with her, but had set no date and requested none for the desired conference. Travel by rail to Madison involved considerable inconvenience to the plaintiff, and undoubtedly some risk of injury because of her crippled condition and the necessity of changing cars at Portage. At least the plaintiff so regarded it. The plaintiff had not told her board anything concerning the desired conference with Miss Hazeltine. On Monday, May 25th, the plaintiff was invited to a breakfast given by the Shakespeare Club of Tomah. She was an honorary member of that club, and as such attended the breakfast. Three women from Madison were guests of the club on that occasion. During the breakfast some one inquired of the Madison guests when they were going back to Madison and the reply was: "About 4 o'clock." The plaintiff, who overhead the conversation just mentioned, said:

"Oh, I have been wanting to get to Madison for a long time, but I always balk at the change of cars at Portage. I wanted to get down to see Miss Hazeltine."

One of the Madison women then said: "Come along with us." The plaintiff then said: "If I can arrange it, I will do so." At the conclusion of the breakfast, the plaintiff went home, called up her assistant, and asked her to take the library until she returned on Wednesday. She asked her assistant to report at 4 o'clock. Her assistant and the Madison car arrived at the library at about the same time. The plaintiff, before departing for Madison, did not notify the president of her board, or any member thereof, that she was

about to make the trip, and did not attempt to get their approval of it. All she had time to say to her assistant was that she was going to Madison. The plaintiff arrived in Madison that evening and, pursuant to her wishes, was taken to the Young Women's Christian Association building where she obtained a room. She declined an invitation to stay at the home of one of the Madison women because she wanted to be near to the library school. The school at that time was located in the Madison public library, across the street from the Young Women's Christian Association building. The next morning she went to the library school and sought out Miss Hazeltine. She, of course, had no appointment with Miss Hazeltine, but, nevertheless, was afforded an opportunity to confer with Miss Hazeltine to a limited extent, although her conference was interrupted because of the fact that Miss Hazeltine was very busy with other matters, especially that of preparing her report of thirty years as head of the library school. During the forenoon Miss Hazeltine conferred with the plaintiff several times,—in all about thirty or forty minutes, directed her to the room containing the juvenile books in which the plaintiff was particularly interested because of her desire to improve that department of the Tomah library and to ascertain how and where best to buy such books. When the plaintiff left Miss Hazeltine late in the forenoon it was understood that she would be back later for a continuance of the conference. During the afternoon, the plaintiff did "some reference work," the nature of which does not clearly appear, in the State Historical Library. At dinner that night the plaintiff was a guest of Miss Bascom of the University Extension Division. That dinner concededly had nothing to do with her duties as librarian, and was not in furtherance of the purposes of her trip to Madison. The following morning, the plaintiff intended to continue her conference with Miss Hazeltine, but her injury,

which occurred when she was about to leave her room key at the desk, made that impossible. The plaintiff testified:

"My only motive in going to Madison was to discuss with Miss Hazeltine or some member of the library commission some projects I had in mind, some comparisons to make relative to our rating as a library."

She further testified that she wanted more detailed information than she could obtain from those who occasionally made routine visits to the Tomah library, as employees of the library school.

"It was desirable for me to go down to Madison to do that. The information gained was decidedly necessary. It could not be gained through correspondence. The determining factor in my going on that day was that I had the opportunity. It could not have been handled except by my presence in Madison."

The plaintiff seldom made trips in the interest of or for the benefit of the Tomah library. She had, during her thirty-five years of service as librarian, attended about fifteen or sixteen meetings of the Wisconsin Library Association. The dates of such meetings were fixed long in advance thereof, and she always reported to her board the dates thereof and whether she planned to attend. About eight years before she was injured she had made a trip to Madison on her own expense, during her vacation time. The president of the library board testified, among other things:

"The board had complete confidence in Miss Voswinkel. . . . We rather expect the librarian to improve herself professionally, and we feel that if she has an opportunity to do that with some expense to the board, that we ought to pay her. . . . It was understood that she might use her discretion in making trips in the interest of the library. . . . If she had called me that day, I would have told her I thought the board would approve the expenditure. . . . I would have told her I thought the trip was legitimate and would be

allowed. . . . I would have told her I thought it was a very wise trip under the conditions, because it would be a very inexpensive trip. . . . She had authority to use her judgment and I would think she could continue to make trips like that until the board voted she couldn't because that is an implied understanding that we have."

The examiner found the facts as recited, though not in such complete detail, and then concluded:

"The examiner, therefore, concludes that applicant was not injured in the course of her employment by the city of Tomah; that the nature of the work and the established custom of the parties relative to express prior authorization for travel, stamp the trip in question as one outside the scope of applicant's employment even though she 'took her work' with her when she left and discussed library problems with others in that field, while she was gone."

The plaintiff's application was therefore dismissed. Upon the plaintiff's petition for a review by the commission as a body, the order of the examiner was affirmed. Upon the review by the circuit court, the court affirmed the order.

The conclusion of the commission that the applicant was not injured in the course of her employment by the city of Tomah was obviously intended by both the examiner and the commission to be a conclusion that at the time of the plaintiff's injury she was not performing service growing out of and incidental to her employment. Sec. 102.03 (1), Stats. The circuit court, in its decision, stated:

"We are convinced that Miss Caroline Voswinkel, librarian at the city of Tomah, was acting in the course of her employment when injured during her stay in Madison on May 27, 1936. In other words, she was in Madison *on business*. All the testimony is to this effect. There is no testimony to the contrary."

Notwithstanding that opinion, the circuit court treated the conclusion "that applicant was not injured in the course of

her employment" as a finding of fact, which under the well-established law might not be disturbed.

We are of the opinion that the circuit court erred in holding that the conclusion of the commission was a finding of fact or an inference of fact rather than a conclusion of law.

Whether in a given case a general finding is a finding of fact, an inference of fact, or a conclusion of law, is not always easy to determine. A finding that at the time of an applicant's injury he was performing service growing out of or incidental to his employment may be a finding of fact although, in our view, findings of fact should not be expressed in that form. For instance, an applicant suffers an injury from which blood poisoning results. The controlling question may be, Did he receive the slight wound, scratch, or get the sliver in his hand while engaged in work for his employer, or did he suffer such injury while doing some work for himself at home? Where the facts permit of an inference that he was or was not injured while working at his job, a finding that he was or was not injured while performing service growing out of and incidental to his employment would doubtless be construed as a finding of fact. *Oscar Mayer & Co. v. Industrial Comm.* 219 Wis. 474, 263 N. W. 88; *Milwaukee E. R. & L. Co. v. Industrial Comm.* 222 Wis. 111, 267 N. W. 62.

Likewise, the question as to who had control of the work in hand may present a question of fact. *Tiffany v. Industrial Comm.* 225 Wis. 187, 273 N. W. 519. In that case, the real question determined was, Who had the right to control the operation of a lath mill? In *Continental Baking Co. v. Industrial Comm.* 222 Wis. 432, 436, 267 N. W. 540, it was said:

"As there is no substantial dispute as to the material facts, the determination by the examiner and the commission that Drew was injured while performing services growing out of

and incidental to his employment was virtually but a conclusion of law, which may be reviewed on appeal 'for the purpose of ascertaining whether they support the conclusion of the commission.' "

In *Johnson v. Industrial Comm.* 222 Wis. 19, 20, 267 N. W. 286, it was said:

"It [the commission] concluded that Johnson's injury arose out of a hunting venture and not out of his employment as a game warden, and that there was no liability for compensation under the Workmen's Compensation Act. . . . The trial court decided, upon the findings made by the commission and the undisputed facts in the record, that the injury did arise out of, and was incidental to, the employment."

This court affirmed the judgment of the circuit court.

In *International Harvester Co. v. Industrial Comm.* 220 Wis. 376, 379, 265 N. W. 193, the facts were not in dispute, and the question was whether the applicant at the time of his injury was performing service growing out of and incidental to his employment. The commission found that he was. It was there said:

"In a case where there is no issue as to the facts, we are not so bound by its conclusions of law, but may review the facts to ascertain whether the commission exceeded its authority in making its conclusion of law."

In *Gomber v. Industrial Comm.* 219 Wis. 91, 93, 261 N. W. 409, the only question involved was whether the deceased was an employee or an independent contractor. The commission found that he was an independent contractor. This court said:

"The facts are undisputed, so the only question before us relates to the commission's conclusion of law as to the status of Gomber at the time he was injured."

This court reviewed the facts and reversed the circuit court which had confirmed the order of the commission.

In *Olson Rug Co. v. Industrial Comm.* 215 Wis. 344, 345, 254 N. W. 519, the question was whether, at the time of the accident, the applicant was performing service growing out of and incidental to his employment. The commission concluded that he was. This court said:

"Since the conclusion of the commission is a mere conclusion of law, we may review the facts for the purpose of ascertaining whether they support the conclusion of the commission."

To the same effect is *Western W. & I. Bureau v. Industrial Comm.* 212 Wis. 641, 250 N. W. 834.

As before stated, it is sometimes difficult to determine whether a finding is a finding of fact or a conclusion of law. The mere fact that it is denominated a finding of fact does not make it such or prevent its being found to be a conclusion of law. *Tesch v. Industrial Comm.* 200 Wis. 616, 229 N. W. 194.

In *Githens v. Industrial Comm.* 220 Wis. 658, 265 N. W. 662; *Indrebo v. Industrial Comm.* 209 Wis. 272, 243 N. W. 464, and other cases, this court treated findings, that the applicants, at the time of their injuries, were or were not performing services growing out of and incidental to their employments, as presenting questions of fact. It may not be claimed that this court has at all times been consistent in its holdings. It would be helpful if the commission would always find the facts and then express its conclusions.

It is our view that the language, "the examiner, therefore, concludes that applicant was not injured in the course of her employment by the city of Tomah" was not a finding of fact and was in truth and in fact a conclusion of law which properly, under our established law, may be reviewed by the circuit court or this court.

This controversy, in our view, is ruled by *Barragar v. Industrial Comm.* 205 Wis. 550, 238 N. W. 368, and *Peterson*

*v. Industrial Comm.* 215 Wis. 96, 254 N. W. 342. In the *Barragar Case* the real question was: At the time of the accident, was Barragar on his employer's trip or on his own? The court there said (p. 554):

"The difficulty in such cases is to establish some basis for ascertaining whose trip it was. While in a sense this is a question of fact, yet it is a question that must be determined by the application of some legal test or standard."

That case was one of first impression in this court and we adopted and approved of the legal test stated in *Matter of Marks v. Gray,* 251 N. Y. 90, 93, 167 N. E. 181. The court in that case, speaking through Mr. Justice CARDOZO, said:

"We do not say that the service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. . . . The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . . If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk."

Treating the finding of the commission as a conclusion of law, and subjecting the whole record to a careful review, we are of the opinion that there is no basis in the record for the conclusion that at the time the applicant was injured she was not performing services growing out of and incidental to her employment. The testimony is undisputed that the plaintiff desired to make the trip to Madison for the purpose of discussing with Miss Hazeltine certain projects in which the library was interested and which were for its benefit. The trip had been contemplated for some time. The plaintiff had written to Miss Hazeltine as early as April stating the desire for such a conference. She went to Madison, and her every

act there is corroborative of her statement that the sole motive of her trip was to consult Miss Hazeltine and discuss the several library projects which she had in mind. To say that she went to Madison because of an opportunity for a pleasant ride, or to subserve some social purpose, is clearly unwarranted by the evidence. The fact that her position and work seldom required her to travel, the fact that she quickly availed herself of the opportunity to go to Madison without having a board meeting and formal approval of the trip, does not militate against the conclusion reached. We think all of the evidence points to the conclusion as stated by the circuit court when he said:

"She was in Madison on business. All the testimony is to this effect. There is no testimony to the contrary."

If the examiner or the commission had had the temerity to say that the testimony of the plaintiff was false, and that the testimony of the president of the library board was incredible, or, if the city or the insurance company had adduced evidence in conflict with the evidence adduced by the plaintiff, a different situation would exist.

*By the Court.*—Judgment reversed, and cause remanded with directions to the circuit court to reverse the order of the Industrial Commission with directions to the commission to determine the compensation to which it is held the plaintiff is entitled.

ROSENBERRY, C. J. (*dissenting*). I cannot agree with the conclusion reached by the court for the reason that in my opinion the record presented a question of fact for the Industrial Commission and its finding is under well-established rules conclusive upon the court.

FRITZ, J., also dissents.

A motion for a rehearing was denied, with $25 costs, on January 10, 1939.