225 P.2d 43

### BENTLEY et al. v. INDUSTRIAL COMMISSION.

No. 5301.

Supreme Court of Arizona.

Dec. 7, 1950.

182

V. L. Hash and Virginia Hash, Phoenix, for petitioner Thomas M. Collins.

Charlie W. Clark and Marshall W. Haislip, Phoenix, for petitioner Oran L. Bentley.

Evans, Hull, Kitchell & Jenckes, Phoenix, by Norman S. Hull and John E. Madden, Phoenix, for petitioner Farley H. Hennessy.

Jennings, Strouss, Salmon & Trask and J. A. Riggins, Jr., Phoenix, for petitioner Fraternal Order of Eagles, Aerie 2407.

H. S. McCluskey, Phoenix (Robert E. Yount and Donald J. Morgan, Phoenix, of counsel), for respondent Industrial Commission of Arizona.

Guynn & Twitty, Phoenix, for Amicus Curiæ.

UDALL, Justice.

This case is before the court on certiorari from the Industrial Commission to review an award denying compensation under the Workmen's Compensation Act for the death on April 21, 1949, of Oran L. Bentley and Farley H. Hennessy and the serious injury of Thomas M. Collins. The facts which are not seriously in controversy, and out of which this proceeding arose, may be stated as follows: Fraternal Order of Eagles, Aerie No. 2407, hereafter called the Aerie, is a fraternal organization existing under Ch. 61, Art. 9, A.C.A.1939. It is a subordinate lodge of the Grand Aerie F.O.E. and subject to its own constitution and the constitution, rules and regulations of the Grand Aerie. Almost from its organization in 1944 the local Aerie has been in such difficulties as to require the frequent intervention of the Grand Aerie. In May, 1948, the chief auditor of that body directed Ralph Bentley to take charge of the Aerie under Art. 52, Sec. 19 of its constitution, which reads as follows: "Section 19. *Emergency Administration.* Whenever in the opinion of the Grand Worthy President and the Board of Grand Trustees any Subordinate Aerie, or any of its officers, shall for any reason fail to function under the lawful procedure provided by our laws, the Grand Worthy President on approval of the Board of Grand Trustees is authorized to *remove* any or all of its officers and to direct the Chief Auditor to assign a representative of the Grand Aerie to take full charge of such Aerie's affairs until a full complement of officers shall have been appointed or elected under the direction of the Chief Auditor. Such Aerie and officers shall be under the direction of the Grand Aerie representative until the Chief Auditor is assured that such Subordinate Aerie will faithfully and properly conduct its affairs in accordance with all required and ordained procedure of the Order." (Emphasis supplied.) At that time Oran Bentley was secretary of the Aerie and manager of its buffet and he remained as such, being advised by Ralph Bentley, until March 22, 1949, when the secretary wrote the chief auditor asking for further assistance. The chief auditor appointed W. J. Fitzgerald for this purpose. The latter, after a discussion of conditions with Oran Bentley and James Day, president of the local Aerie, addressed a lengthy letter, accompanied by Bentley's written resignation, to the local Aerie under date of April 12, 1949. This letter, which recited the past difficulties of the local, read in part as follows:

"Brother Bentley's resignation will be accepted by the Chief Auditor with regret; certainly Brother Bentley has given time

and energy to trying earnestly to fulfil the requirements of a Secretary. One of the most important parts of a Secretary's work is to maintain the financial records correctly. Without an accurate accounting, the Aerie will go broke.

"Secretary Bentley's resignation is effective April 15, 1949. Brother F. H. Hennessy of Phoenix, Arizona and a member of Olympia, Washington, Aerie # 21 is directed by the G. W. P. and C. A. to serve as Secretary Manager to manage the affairs of the Aerie, pursuant to Article 52, Sec. 19 of the C. S. A.

"We sincerely hope that each and every member of Phoenix Aerie will cooperate with Brother Hennessy In the management of the Aerie. With best wishes—

"Fraternally
    "W. J. Fitzgerald
    "Deputy Grand Worthy President"

Bentley's resignation was accepted at a regularly convened meeting held on the same date. The minutes of the meeting show only the following entry referring to the matter: "16 New business. O. L. Bentley resigned as Secretary-Manager effective April 15. Letter attached."

An officers' meeting was held on April 18th, the minutes being signed "F. H. Hennessy, Sec. protem," while at a regular meeting of the Aerie held on the same day the minutes were signed "F. H. Hennessy, Secretary." No reference to Hennessy's oppointment or Bentley's resignation appears in the minutes of either of these last two meetings.

On April 21st, Hennessy, Bentley, and Collins (the latter being steward of the buffet of the Aerie), and a fourth man not involved in this proceeding, started by auto for Tucson. The trip was made at the instance and upon the request of Hennessy. On the way their car ran into the rear of a truck near Tucson, and as a result Hennessy and Bentley were killed instantly and Collins was seriously injured. There is no other written record of any other action of the Aerie or its Board of Trustees in regard to the resignation or removal of Bentley or the appointment of Hennessy. There is however considerable oral evidence which we shall discuss later.

The commission, a month prior to this accident, had issued its insurance policy covering the entire liability under the Workmen's Compensation Act of the employees named therein to "Fraternal Order of Eagles, Aerie No. 2407" as the employer. This policy was in full force and effect at the time of the accident, and application was made to the commission by the proper parties for compensation under the act and a hearing was held on June 4, 1949. An award was made July 6, 1949, finding that Hennessy, Bentley, and Collins were at the time of the accident employees of the Aerie but that they were not acting in the scope of their employment at that time, and denying compensation to any of them. A rehearing was had September 14, 1949, and

further evidence, both written and oral, presented. On October 26, 1949, the commission made its findings. It reaffirmed its previous finding that Hennessy and Collins were employees of the Aerie at the time of the accident but found Bentley was not. It further found that Hennessy and Collins at the time of the accident were acting outside the scope of their employment, and denied compensation to any of them. Thereafter the matter was brought to this court for review in the proper manner.

It will be seen from the foregoing statement that two questions are presented for our determination. First, were the injured parties, or any of them, at the time of the accident employees of Aerie No. 2407? and, second, if so were they at that time acting in the scope of their employment? In considering these questions there are certain well established principles which must govern our conclusions. We quote from the very recent case of Tooley v. Weisbarth, 66 Ariz. 230, 186 P.2d 638, 640. "It is the law in Arizona that the burden of proving that an injury arose out of and in the course of the injured person's employment rests upon that employee. * * * But findings of fact, once made, are entitled to the same treatment on review as those of a trial court and will be presumed correct where evidence is conflicting. * * * Finally, although the facts to sustain or deny an award must be fairly weighed by the Commission, the Act itself is remedial and its scope is to be liberally construed. * * * "

We consider first the status of Hennessy. The position of the commission on this point is somewhat anomalous. Notwithstanding that in its findings it has always found that Hennessy was an employee of the local Aerie at the time of the accident, it now contends in its brief that he was an employee of the Grand Aerie and thus not covered by the insurance policy issued by it, which covered only employees of the local Aerie. Let us consider this question first on the technical record. This record shows conclusively as follows: (1) Bentley was on April 12, 1949, the secretary of the Aerie and manager of its buffet, in the employ of the local Aerie; (2) on that date he *resigned* both positions with the approval of Fitzgerald, who was the duly authorized deputy of the chief auditor, and the *resignation* was presented to the local Aerie; (3) the vacancy thus created was filled by the appointment of Hennessy. No suggestion was ever made either in writing or orally that Bentley was *removed* from office. The provisions of the constitution of the Aerie applicable to the filling of a vacancy in an office are as follows:

"Article 2, Section 6(c). *Vacancies.* Any vacancy which may hereafter occur in the office of Secretary of any Subordinate Aerie by reason of death, resignation, termination of office, or any other cause, may be filled by regular election with permis-

sion of the Board of Grand Trustees *or by appointment by the Chief Auditor* as the Board of Grand Trustees shall determine." (Emp. sup.)

"Article 2, Section 9. * * * Any vacancy caused by the removal of any officer by, or resignation of any officer at the request of, the Grand Worthy President or Chief Auditor or the authorized deputy of either, shall be filled forthwith upon such resignation or removal and kept filled for the unexpired term by appointment and installation made by the Grand Worthy President or his representative. Any resignation by any officer, or member, of any Subordinate, State, District or Provincial Aerie made to or at the request of the Grand Worthy President, Chief Auditor or authorized representative of either shall be effective forthwith without formal acceptance by such Aerie."

It will be noted the constitution distinguishes between the effect of filling a vacancy caused by the *removal* of an officer under Art. 52, Sec. 19, supra, and one caused by the *resignation* of an officer with the approval of the authorized deputy of the chief auditor under Art. 2, Sec. 6(c) and Sec. 9, supra. All of the evidence shows that it was the latter situation which existed and not the former. It is true Fitzgerald in his letter to the Aerie stated the appointment of Hennessy was made under Art. 52, Sec. 19, but the same letter shows that Bentley had *resigned* and had not been *removed*. The only situation under which

the Grand Aerie is authorized to *take charge* of the affairs of a local Aerie is on the *removal* of an officer and this the evidence shows was never done. We think there can be no question that under the constitution of the Aerie and the undisputed facts Fitzgerald did not take over the management of the local Aerie under Art. 52, Sec. 19, but that he did appoint Hennessy under Art. 2, Sec. 6(c) and Sec. 9, to fill a vacancy caused by the *resignation* of Bentley, and that by virtue of such appointment Hennessy became and was an employee of the local Aerie and not of the Grand Aerie.

But even assuming we do not apply the strict rule of constitutional construction to the case, there are a number of factors which should be considered in determining whether the relation of employee and employer existed between Hennessy and the local Aerie. Among these are (1) the provisions of the contract of employment expressed or implied, (2) by whom the compensation is paid, (3) for whose benefit the work is done, (4) the power to discharge, and (5) the right of control. The contract of employment of Hennessy, which the undisputed evidence shows would have been completed in writing had not Hennessy been killed in less than a week after his appointment would have named Phoenix Aerie No. 2407, F.O.E., as the employer. The work Hennessy was to perform was clearly for the benefit of the local Aerie and not the Grand Aerie. His

compensation was paid by the local Aerie. But notwithstanding this, it is contended that under Art. 52, Sec. 19, supra, the Grand Aerie had full control over the local Aerie, and the right to remove any or all officers, and was thus the real employer of Hennessy within the meaning of the insurance policy. We think it is apparent that the Grand Aerie had the power to take over control of the local Aerie but that in the instant case it did not exercise this power. We think also the commission has misconstrued the meaning and effect of this section. If we give it the meaning now attributed to it by the commission, then any time the Grand Aerie finds it necessary to intervene thereunder in the affairs of the local Aerie it becomes ipso facto the employer of each and every person engaged in any manner in the affairs of the local Aerie and responsible under the Workmen's Compensation Act for injury to them with no responsibility resting on the local Aerie's insurance carrier or on the local, for whom their activities are performed and by whom they are paid. That such was the meaning intended by the Grand Aerie when it adopted this provision in the constitution of subordinate Aeries is incredible, and for us to place such a construction thereon would violate every principle of reason and justice. We think the "direction" given the Grand Aerie representative under the section is a very different thing from the "supervision or control" referred to in Sec. 56-928, A.C.A.1939, as creating the relation of employer and employee. The finding of

the commission that at the time of the accident Hennessy was an employee of the local Aerie is fully sustained by the evidence.

So far as Collins is concerned the commission has twice found that he was an employee of the local, and the evidence fully sustains its findings.

In considering the case of Bentley a legal question as to his right of recovery, as well as a decided conflict in the evidence, appears. In support of the contention that he was an employee at the time of his death reliance is placed upon parol evidence of Bentley's fraternity brothers to the effect that he was retained in the employ of the Aerie for an additional two weeks to "break in" his successor; that up to the time of his death Bentley assisted and advised Hennessy in regard to the duties of the office to which the latter had just been appointed. The testimony shows further that it was customary for an outgoing officer to aid his successor in office for a two-week period. It also appears that subsequent to his death the Aerie paid Bentley's widow his usual salary for the two-week period.

On the other hand the record discloses, that Bentley tendered, without qualification, his written resignation as secretary-manager effective as of April 15, 1949, and that the resignation was accepted and Bentley's successor (Hennessy) was duly installed. The commission contends: (1) that Bentley's previous employment was covered by a written contract under Art. 14, Sec. 17 of the Grand Aerie Constitution

for the government of subordinate Aeries. It reads in part as follows: "* * * that all such agreements shall terminate and expire when the services of a member so appointed terminates as Secretary of the Aerie." (2) that under Art. 14, Sec. 2 of the Aerie Constitution, which provides: "Except as otherwise provided in the Laws of the Order, the Board of Trustees shall have charge of the maintenance and operation of the home, clubrooms and buffet belonging to the Aerie, and shall employ, discharge and control the conduct and duties of all of the employees of the Aerie. * * *" the Board of Trustees alone had the right to employ Bentley in any capacity after his resignation as secretary-manager. Concededly, there is no reference in the minutes of the Board of Trustees or of the Aerie sanctioning such appointment nor is there any written memorandum of any character making an appointment or continuing Bentley's employment beyond the effective date of his resignation; and (3) that Art. 14, Sec. 2, supra, which states in part: "* * * The board shall have no authority to enter into any contract involving the expenditure of any money or the payment of salaries, or the employment of any steward, custodian or other employee, unless the Aerie shall have first provided for same in its approved by-laws." expressly prohibits any expenditure by the trustees to Bentley.

It is significant that inconsistent theories were adopted by witnesses testifying in support of Bentley's claim. W. J. Fitzgerald, the Grand Aerie representative, first contended that it was a custom throughout all of the Aeries to pay a resigning officer his salary for the balance of the month, and later he stoutly maintained that since the contract with Bentley provided for a monthly salary he was legally entitled to his salary for the balance of the month of April. These discrepancies in the testimony clearly show its unreliability. Nick Barrata (Hennessy's successor) stated that he paid the salary to the widow on the latter basis. In the petitioner's brief these theories are abandoned and it is urged that Bentley was an employee at the time of his death because of a subsequent parol contract entered into between him and the local Aerie.

The power of the secretary under Art. 12, Sec. 19, to appoint one or more assistants to aid him in carrying on the duties of his office (who are to be paid from the secretary's own salary) is of no avail in establishing Bentley's employment subsequent to the effective date of his resignation, since there is not a scintilla of evidence that any such arrangement had been made. All of the evidence is to the contrary, i.e., that Bentley was orally employed by the Board of Trustees to stay on at the expense of the Aerie to "break in" his successor.

■ In the light of these conflicts we hold: (a) that there was no legal basis for paying Bentley's widow; and (b) even as-

suming there was, that the commission, as triers of fact, had ample evidence upon which to base its finding that Bentley was not an employee of the Aerie at the time of the fatal accident. As was stated in Craig v. De Berge, 67 Ariz. 168, 171, 193 P.2d 442, 443: " * * * This court does not weigh the testimony, but only searches the record to see whether the Commission's findings are supported by any substantial evidence, even though there might be other contradicting evidence. (Citing cases.)" See also Gibson v. Industrial Comm., 68 Ariz. 313, 205 P.2d 588.

We come now to the question as to whether at the time of the accident Hennessy and Collins were acting in the scope of their employment. The uncontradicted and undisputed evidence of disinterested witnesses shows that the conduct of the social room and buffet of the Aerie had been very unsatisfactory and unprofitable, while that of the Tucson Aerie had been both satisfactory and profitable. Hennessy thought that a visit to that Aerie might give some ideas which would improve the situation in the Phoenix buffet, and for that purpose decided to visit the Tucson Aerie. Collins was the steward who for some considerable time had been engaged in the running of the Phoenix social room and buffet, and for that reason Hennessy asked him to go along. Was the trip thus taken within the scope of the employment of Hennessy? It was stipulated that there is no express provision of the constitution and bylaws of the Aerie or the contract of employment of Hennessy which authorized the latter to take such a trip for such a purpose. On the other hand there is no provision in the constitution or contract which directly or by implication denies such authority. The question then is: Was such a trip for the purpose above set forth reasonably necessary for Hennessy to make in order to properly perform his duties either as secretary or manager of the buffet of the local Aerie? The position of secretary and that of manager of the buffet and social rooms of the Aerie and the duties of those positions are entirely separate and distinct. Arts. 12 and 14, Const. Aerie. The avowed purpose of the trip had nothing to do with any duty, express or implied, of the secretary, and it cannot be held that Hennessy on the trip was in the scope of his employment as secretary. When, however, we consider his position as overall manager of the buffet and social room, the situation is very different. It was his duty to operate them successfully if possible. The fact that an adjoining Aerie made a great success of its buffet and social activities might reasonably have caused Hennessy to believe a personal investigation of that Aerie's buffet would aid in the improvement of that of the local Aerie. The following cases present analagous situations: Bocock v. State Board of Education, 55 Idaho 18, 37 P.2d 232; Mann v. Board of Education, 266 Mich. 271, 253 N.W. 294; Voswinkel v. Industrial Comm., 229 Wis. 589, 282 N.W. 62.

■ We think the undisputed evidence shows that Hennessy was acting in the scope of his employment as manager of the buffet and social rooms at the time of his accident. Collins was the steward actually charged with the operation of the buffet and went on the trip at the direction of his superior for the same purpose. We think he also was acting within the scope of his employment.

In view of our decision it is unnecessary to consider any of the other questions raised by the record.

Award denying · compensation to Hennessy and Collins set aside, affirmed as to Bentley.

LA PRADE, C. J., and STANFORD, and DE CONCINI, JJ., concur.

PHELPS, Justice (dissenting).

I regret that I am unable to agree with the majority opinion in this case.

It is my view that at the time of the tragedy here involved taking the lives of Oran L. Bentley and Farley H. Hennessy and the serious injury of Thomas M. Collins that all of these persons were employees of the Grand Aerie, Fraternal Order of Eagles, and not of local Aerie No. 2407. Therefore they are not entitled to compensation under the laws of this state as against the local Aerie.

Let us examine the provisions of the constitution of the local Aerie relating to the issues presented in this case. Section 6 (c) of article 2 of the constitution provides: "Vacancies. Any vacancy which may hereafter occur in the office of Secretary of any Subordinate Aerie by reason of death, resignation, termination of office, or any other cause, may be filled by regular election with permission of · the Board of Grand Trustees or by appointment by the Chief Auditor as the Board of Grand Trustees shall determine."

It will be observed that this section provides for the filling of vacancies, not only caused by death or resignation, but from "any other cause" including removal. Section 9 of article 2 then provides that: "Vacancies. Except in the case of removal, or suspension, of any officer for cause, by a representative of the Grand Worthy President, vacancies in the offices of any Subordinate Aerie shall be filled as hereinafter provided: If a vacancy occurs in the office of Worthy President, the Worthy Vice-President shall succeed to the office of Worthy President, and the office of Worthy Vice-President shall be declared vacant; when a vacancy occurs in any other elective office, or in the office of Junior Past · Worthy president, *each member shall be immediately notified, in writing, of the existing vacancy and of the time and place that action will be taken by the Aerie to fill such vacancy for the unexpired term. At the meeting stated in such notice, the Aerie shall decide, by a majority vote, whether to fill such office by election or appoint-*

*ment, except that the office of Worthy Vice-President may be filled by election only.* If the Aerie decides on appointment, then the *Worthy President* shall forthwith appoint a member of the Aerie in good standing to fill the vacancy; if the Aerie decides on an election, then nominations may be had at the same meeting and the election at the next following regular meeting of the Aerie, * * *. Any vacancy caused by the removal of any officer by, *or resignation of any officer at the request of, the Grand Worthy President or Chief Auditor or the authorized deputy of either,* shall be filled forthwith upon such resignation or removal and kept filled for the unexpired term by appointment and installation made by the *Grand Worthy President* or his representative. Any resignation by any officer, or member, of any Subordinate, State, District or Provincial Aerie made to or at the request of the Grand Worthy President, Chief Auditor or authorized representative of either shall be effective forthwith without formal acceptance by such Aerie." (Emphasis supplied.)

There is not a scintilla of evidence in the entire record that the appointment of Hennessy was made in accordance with the provisions relating to the filling of a vacancy created by voluntary resignation. In the first place there was no notice given to the members of the local Aerie that a vacancy existed in the office of secretary of the local Aerie, fixing the time and place that action be taken to fill such vacancy.

There is not a particle of evidence that a meeting was ever held pursuant to a notice, or otherwise, wherein the members of the local Aerie decided whether the vacancy in the office of secretary should be filled by election or appointment. The language of the constitution is to the effect that if, by a majority vote, the members decide that the vacancy shall be filled by appointment, that such appointment shall be forthwith filled by the *Worthy President* of the local Aerie.

Nowhere in the record is there one word to the effect that Hennessy was appointed by the Worthy President of the local Aerie. When W. J. Fitzgerald, representative of the Grand Aerie, was asked the question: "You were present at the meeting at which Hennessey was appointed, were you not?" he answered: "I appointed him." And later he was asked: "And you appointed Mr. Hennessey?" and again he answered "That is correct." According to the record in this case, Fitzgerald at that time was Deputy Grand Worthy President of the Grand Aerie and Acting Grand Deputy Auditor. He was sent here by the Chief Auditor of the Grand Aerie under the provisions of section 19, article 52 of the constitution of the local Aerie for the express purpose of correcting the irregularities in the office of the secretary of the local Aerie whose record of the finances of the local Aerie was at variance with both the records of the treasurer of the local Aerie and the bank at which the funds were kept and to do just what he did do.

The record unequivocally shows that the provisions of the constitution relating to the filling of vacancies applicable to a voluntary resignation were not followed in a single particular. On the other hand the constitutional procedure for filling the vacancy in the office of secretary, in case of removal or resignation by request of the Grand Aerie, was followed in every particular except that O. L. Bentley was permitted to resign. This may be reasonably accounted for because of the fact that he was a brother of Ralph Bentley who, during a part of the time, at least, was a field director of the Grand Aerie and who had been sent to Phoenix to assist O. L. Bentley in straightening out his books. The resignation of O. L. Bentley under the circumstances cannot logically be said to be voluntary. It clearly falls in the category of a "resignation by request." As above pointed out his records were woefully out of accord with the records of the local treasurer and with that of the bank. Fitzgerald, in reporting his action to the local Aerie by letter on April 12, 1949, gave a resume of the difficulties which the Grand Aerie had experienced with the local Aerie ever since its organization because of improper use of the funds of the local Aerie by those in authority. In closing this letter he stated: "Secretary Bentley's resignation is effective April 15, 1949. Brother F. H. Hennessey of Phoenix, Arizona and a member of Olympia, Washington, Aerie # 21 is directed by the *G.W.P. and C.A.* (meaning Grand Worthy President and Chief Audi-

tor) to serve as Secretary Manager to manage the affairs of the Aerie, pursuant to Article 52, Sec. 19 of the C.S.A. (Constitution Subordinate Aerie)." (Emphasis supplied.)

Section 19 of article 52 of the Constitution Subordinate Aerie reads as follows: "Emergency Administration. Whenever in the opinion of the Grand Worthy President and the Board of Grand Trustees any Subordinate Aerie, or any of its officers, shall for any reason fail to function under the lawful procedure provided by our laws, the Grand Worthy President on approval of the Board of Grand Trustees is authorized to remove any or all of its officers and to direct the Chief Auditor to assign a representative of the Grand Aerie to take full charge of such Aerie's affairs until a full complement of officers shall have been appointed or elected under the direction of the Chief Auditor. Such Aerie and officers shall be under the direction of the Grand Aerie representative until the Chief Auditor is assured that such Subordinate Aerie will faithfully and properly conduct its affairs in accordance with all required and ordained procedure of the Order."

If the facts are squarely faced there is absolutely no escape from the conclusion that Hennessy was appointed secretary by Fitzgerald who was acting as a representative of the Grand Aerie under the authority vested in him under the provisions of section 19 of article 52, supra. How any other conclusion can be reached is beyond

my comprehension especially in light of his letter of April 12th, before any question of compensation arose. Section 19, article 52 expressly provides that: " * * * such Aerie and its officers shall be under the direction of the Grand Aerie representative until the Chief Auditor is assured that such Subordinate Aerie will faithfully and properly conduct its affairs in accordance with all required in the ordained procedure of the Order."

Fitzgerald appointed Hennessy on the 12th. It is unreasonable to think that he intended to surrender the affairs of the local Aerie to Hennessy and to return the control thereof to the local Aerie on the very day of Hennessy's appointment in the face of the mandatory provision of the constitution that the Aerie should be in full charge of the Grand Aerie and remain under its direction until the Chief Auditor was satisfied that the local Aerie would faithfully and properly conduct its affairs. Fitzgerald had nothing upon which to base a conclusion to the effect that it would so conduct its affairs and furthermore it was the Chief Auditor, not Fitzgerald, who had authority to determine that question.

If, as claimed in the majority opinion, this was a case of voluntary resignation and not one of removal then Fitzgerald had no right whatever to appoint Hennessy. Under the clear provisions of section 9, article 2 of the constitution it became the duty of the Worthy President of the local Aerie to make such appointment. The record is wholly barren of any action taken by the local Worthy President or of the Aerie as a whole concerning the appointment of Hennessey. True they purported to accept the resignation of Bentley but no further steps are shown to have been taken by any person except by Fitzgerald concerning the appointment of Hennessy. His statements before the commission are not only conflicting in themselves but are so at variance with the clear provisions of the constitution delineating the procedure to be followed under such circumstances that they indicate either a desire to aid the families of his brethren in securing compensation in this case or else they indicate a total ignorance of the meaning of the constitutional provisions of the Aerie. In either event they are not entitled to any weight as evidence.

On the ground that none of the persons involved in this litigation were employees of the local Aerie at the time of the accident and injury the findings and award of the commission should be sustained.