227 P.2d 224

BENTLEY et al. v. INDUSTRIAL COMMISSION.

No. 5301.

Supreme Court of Arizona.

Feb. 6, 1951.

V. L. Hash and Virginia Hash, Phoenix, for petitioner Thomas M. Collins.

Charlie W. Clark and Marshall W. Haislip, Phoenix, for petitioner Oran L. Bentley.

Evans, Hull, Kitchell & Jenckes, by Norman S. Hull and John E. Madden, Phoenix, for petitioner Farley H. Hennessy.

Jennings, Strouss, Salmon & Trask and J. A. Riggins, Jr., all of Phoenix, for petitioner Fraternal Order of Eagles, Aerie 2407.

H. S. McCluskey, Phoenix (Robert E. Yount and Donald J. Morgan, Phoenix, of counsel), for respondents, The Industrial Commission of Arizona.

Guynn & Twitty, Phoenix, for Amicus Curiae.

DE CONCINI, Justice.

The Commission has filed a motion for rehearing asking the court to reconsider its opinion on the question of whether Hennessy was within the scope of his employment in making the trip to Tucson.

Without reciting the facts we adopt the same as reported in 71 Ariz. 181, 225 P.2d 43 and we adopt the law therein except where it is inconsistent with this opinion on rehear-

332

ing. We affirm our position that Bentley was not in the employ of the Aerie at the time he was killed; that Collins was an employee and within the scope of his employment at the time he was injured since he was acting under orders of his superior, Hennessy.

The control of the home, club rooms and buffet were in the Board of Trustees under Sec. 2, Art. 14 of the Constitution of the Aerie. The appointment of the secretary-manager was in the Board of Trustees by virtue of Sec. 17, Art. 14 of the Aerie's constitution which follows: "*Appointment of Secretary-Manager.* The Board of Trustees may by written agreement and only with the written approval of the Chief Auditor and for such period of time and upon such terms and conditions as the Chief Auditor may approve, engage and appoint the Secretary of the Aerie as *Secretary-Manager of the Buffet and Social Rooms and properties of the Aerie and delegate to him such duties and authority as provided in such agreement*; provided, however, that all such agreements shall terminate and expire when the service of the member so appointed terminates as Secretary of the Aerie." (Emphasis supplied.)

The portion in italics specifically sets out the source of the power and duties of the secretary-manager.

■ Hennessy was under a contract with the Board of Trustees which had not yet been formally executed but was to be similar to the contracts which Bentley, his predecessor, and Barrata, his successor, were under. It was stipulated that there is no express provision of the constitution or by-laws of the Aerie or the contract of employment which authorized Hennessy to take the trip for such a purpose. In view of this stipulation it is apparent from the reading of the agreements referred to that the intent and purpose was to deny all authority not specifically granted. Therefore we conclude as a matter of law that Hennessy did not have express authority to make such a trip.

The next question is whether the Board of Trustees by their actions impliedly authorized the trip. There is no evidence in the minutes of any meeting authorizing such a trip nor is it contended that it was authorized. An examination of the testimony reveals that the only evidence of the knowledge of the contemplated trip to Tucson by the Board of Trustees is what two of the five members of the Board testified to under oath. Trustee S. F. Dundas testified that Hennessy phoned him at 4 p. m. on April 21 and invited him to go along on the trip to Tucson that day at 5 p. m. He declined because of other duties. Trustee Clyde I. Campbell testified he didn't know whether the trip had been authorized by the Board or not.

A re-examination of the following authorities cited in our original opinion, Bocock v. State Board of Education, 55 Idaho 18, 37 P.2d 232; Mann v. Board of Edu-

cation, 266 Mich. 271, 253 N.W. 294; and Voswinkel v. Industrial Commission, 229 Wis. 589, 282 N.W. 62, compels us to change our view regarding Hennessy's employment. The decisions in those cases were based on facts dissimilar to this case. In each of those cases the traveling employee was permitted either to use his discretion, or had express or implied authority of his employer to make the trip. In this case Hennessy's duties were specifically delegated in a written contract to be executed and similar to Bentley's contract, all in accordance with the Aerie's constitution. Furthermore he had no authority from his board either by resolution or by verbal or implied consent. We hold, therefore, that Hennessy was without the scope of his employment when he was killed.

Our former opinion is affirmed as to Collins since an employee who is injured while following the directions of his employer or his employer's agent is entitled to compensation. Holloway v. Industrial Commission, 34 Ariz. 387, 271 P. 713.

The Commission's award denying compensation to Hennessy and Bentley is affirmed; the Commission's award denying compensation to Collins is set aside.

LA PRADE, J., concurs.

PHELPS, Justice (specially concurring).

In as much as it is now the law of the case that none of the parties here involved were employees of the National Aerie at the time of the accident as I contended they were in my dissent on the original hearing, I now concur in the above opinion.

UDALL, Chief Justice, (Dissenting).

We dissent from the majority opinion on rehearing which now denies to the heirs of Hennessy the death benefits conferred under the workmen's compensation act. We point out that the Commission's motion for rehearing does not present any question of law or fact that was not fully considered in the original opinion. Apparently, for this reason able counsel representing petitioners did not even see fit to reply to said motion.

In the original opinion it was stated that the duty of Hennessy as manager of the buffet and social room was to operate them successfully. That successful operation thereof had not been previously attained is one of the primary reasons why Hennessy was appointed manager and was so at the time of the fatal accident. We held that the position of manager of the buffet and social room carried with it the implied authority to make such trips.

Granting that there was no express authorization for Hennessy to make the trip, and granting also that the board "by their actions" did not impliedly authorize the trip, there still remains unanswered the question, one purely of law, as to whether Hennessy's appointment to the position of manager of the buffet did or did not carry

with it the implied or inferred authority to make the trip. We previously held that it did; we see no occasion now to deviate from that position. See Restatement, Agency, § 8(d), and particularly § 35, comments b and c thereof.

The majority, in our opinion, have failed to come to grips with the problem before them, and practically *sub silentio* reverse the original opinion of this court.

STANFORD, J., concurs.